William **BATES**

v.

**The UNITED STATES.**

**No. 483–71.**

United States Court of Claims.

Jan. 21, 1972.

Winston J. Block, attorney of record, Joliet, Ill., for plaintiff.

Arthur E. Fay, Washington D. C., with whom was Asst. Atty. Gen., L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARAMORE, Judge, DURFEE, Senior Judge, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COLLINS, Judge.

This military pay case is before the court on defendant's motion to dismiss and plaintiff's motion for summary judgment.

As a result of the correction of his military service record plaintiff seeks recovery of active duty pay in the amount of $3,220.80. For the reasons hereinafter set forth the court has decided that plaintiff is entitled to recover and, therefore, his motion for summary judgment will be granted.

Plaintiff enlisted in the Regular Air Force on February 23, 1965, for a period of 4 years. He served overseas in Vietnam until May 12, 1968, at which time he was returned to the continental United States and took up residence in Joliet, Illinois, at his "leave address" and apparently his hometown, pursuant to a permanent change of station order. However, neither this order, nor any subsequent orders, assigned plaintiff to a new duty station.

Upon return to the United States, plaintiff awaited further orders, and he made inquiries in an effort to obtain such orders regarding a new assignment. In response to these inquiries plaintiff received the following letter, dated September 18, 1968, from the Air Force:

> We have just received your letter and your future assignment is as much a mystery as ever. We would appreciate any information you give us on the situation. If you have orders cancelling your previous assignment, we will require at least six copies, along with DD Form 1299 (if you are located near a base) before we can transfer your hold baggage.

Eventually it was ascertained that, for some unknown reason, the Air Force had carried plaintiff on an excess leave status from June 17, 1968, to April 14, 1969.

On May 12, 1969, by special order of the Air Force, plaintiff was relieved of active duty and transferred to the Air Force Reserve.

By order of the Secretary of the Air Force, dated September 25, 1970, plaintiff's military record was corrected to show that he had not been charged with excess leave from June 17, 1968, to April 14, 1969, but rather that he had served on active duty during this period.[1]

During the period from June 1968 to April 1969, which included the time when plaintiff's "future assignment [was] as much a mystery as ever," plaintiff did not receive active duty pay. Consequently, plaintiff was forced to find civilian employment in order to support his wife and family. As a result he earned $3,784.35.

On the basis of plaintiff's corrected record the Air Force Accounting and Finance Center determined that, after the appropriate deductions, $3,220.80 in active duty pay had been wrongfully withheld from plaintiff. However, in computing the *net* amount to which plaintiff was entitled to receive, the Accounting and Finance Center deducted, or offset, the amount of plaintiff's civilian earnings. Since plaintiff's civilian earnings

---

1. The correction of military records is authorized by 10 U.S.C. § 1552 (1970), which provides:

"§ 1552. Correction of military records: claims incident thereto.

"(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of the Treasury may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

"(b) No correction may be made under subsection (a) unless the claimant or his heir or legal representative files a request therefor before October 26, 1961, or within three years after he discovers the error or injustice, whichever is later. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

"(c) The department concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be. * * * *"

($3,784.35) exceeded the amount otherwise due ($3,220.80), plaintiff was informed that he was *not* entitled to receive anything in settlement for his wrongfully withheld active duty pay. The basis for the deduction of civilian earnings was Air Force Regulation 31–3, paragraph 26a, which provides:

26. Settlement Provisions:

a. Basis for Settlement. Settlement of claims shall be based on the decision of the Secretary of the Air Force. Computations of amounts due shall be made by the Comptroller of the Air Force, HQ USAF, or his representative, according to applicable law and regulations. In no case will the amount found due exceed the amount which would otherwise have been paid or become due had no error or injustice occurred. *Earnings received from civilian employment during any period for which active duty pay and allowances are payable may be deducted from the settlement.* Amounts found due may be reduced by the amount of any existing indebtedness to the Government, arising from military service. [Emphasis added.]

■ Regulation 31–3 was promulgated under the authority of 10 U.S.C. § 1552, *supra* note 1, and its effective date was October 21, 1970. This regulation was in full force and effect on December 23, 1970, the date on which the Accounting and Finance Center computed the amount of active duty pay to which plaintiff was entitled. Notwithstanding, however, the regulation was *not* in effect during the time period affected by the correction of plaintiff's record, *i. e.*, June 17, 1968, to April 14, 1969. Also, it was *not* in effect on the date when the correction in plaintiff's record was ordered and effectuated by the Secretary, *i. e.*, September 25, 1970. In fact, regulation 31–3's predecessor had no offset clause, and, as defendant conceded during oral argument, the prior Air Force rule or practice in this type of situation was *not* to make a deduction or offset.

The issue which the court must decide is whether or not the Accounting and Finance Center, in implementing the effect of the corrected record, acted properly in the computation of the net amount of active duty pay due plaintiff. Stated differently, the question is whether plaintiff is entitled to active duty pay as computed under the regulations in effect at the time (1) when the computation by the Accounting and Finance Center was actually made, or (2) when, according to the corrected record, the active duty pay accrued, but was wrongfully withheld.

The court finds it unreasonable to believe that, when the Secretary corrected plaintiff's record thereby entitling plaintiff to recover active duty pay, the Secretary intended to retroactively apply the offset provisions of regulation 31–3. Such an application of the regulation, in the instant case, appears wholly unauthorized, unwarranted, unjustified, and not in consonance with the remedial spirit of the correction statute, *supra* note 1. This conclusion is buttressed by the fact that regulation 31–3 was not in effect on the date plaintiff's record was in fact corrected. As stated previously, plaintiff's active duty pay, according to the corrected record, accrued from June 17, 1968, to April 14, 1969. His record was corrected on September 25, 1970. Subsequently, on October 21, 1970, regulation 31–3 became effective. Therefore, the court holds that the Accounting and Finance Center incorrectly deducted or offset plaintiff's civilian earnings. Plaintiff was, and is, entitled to receive his active duty pay as computed under the Air Force regulations in force and effect at the time when, according to the corrected record, plaintiff's active duty pay accrued.

■ Defendant has argued that, even if the court finds, as we have, that the offset provision of regulation 31–3 is inapplicable in the present case, the deduction of "outside" earnings is supported by decisions of this court involving similar circumstances. *See, e. g.,* Middleton v. United States, 175 Ct.Cl. 786

(1966); Motto v. United States, 360 F.2d 643, 175 Ct.Cl. 862 (1966); Clackum v. United States, 161 Ct.Cl. 34 (1963). The court is well aware of the precedent in this court for the deduction of civilian earnings; however, defendant's contention that these cases are dispositive of the issue in the present case is misplaced. The rule in this court requiring the deduction of civilian earnings is traditionally characterized as being analogous to the principle of mitigation of damages.[2] Such a rule is not controlling here, where the applicable Air Force regulations and practice provide otherwise. In essence, defendant is contending that the Secretary, in correcting plaintiff's record, was bound by and intended to apply a general rule of damages as established in this court, and that he was not bound by and did not intend to apply an express Air Force regulation, the predecessor of 31–3, and the practice established thereunder.

The Secretary, in correcting records, is granted broad remedial and discretionary powers, *supra* note 1. He may grant relief in cases where such relief is not available in this court. In this sense, the Secretary, acting through designated boards, has much greater power than does this court in the exercise of remedial relief. For example, a plaintiff may be barred from *any* relief in this court by our 6-year statute of limitations, 28 U.S.C. § 2501 (1970). This does not mean that the same plaintiff is also barred from relief before a correction board. *See* Oleson v. United States, 172 Ct.Cl. 9 (1965); 10 U.S.C. § 1552(b), *supra* note 1. Likewise, in the case before us, the Secretary, in correcting plaintiff's record, was not bound by the rule in this court which provides for the deduction of outside earnings. The applicable Air Force regulation, the predecessor of 31–3, did not provide for a deduction or offset, and, as noted above, the practice or rule then in effect is the rule which the court must reasonably assume was intended by the Secretary to apply in plaintiff's case.

For the foregoing reasons defendant's motion to dismiss is denied, plaintiff's motion for summary judgment is granted, and judgment is entered for plaintiff in the amount of three thousand two hundred twenty dollars and eighty cents ($3,220.80).

