such withholdings were made on amounts paid to fellows.

It must be concluded that the plaintiffs' stipends as teaching assistants were not fellowship grants or scholarships, as those terms are used in subsection (a) of section 117 of the Internal Revenue Code of 1954, but, rather, were payments for services rendered and, hence, were subject to the income tax.

Furthermore, even if the plaintiffs' stipends had been officially designated as fellowship grants or scholarships in the local terminology, such stipends would still be taxable.

Subsection (b)(1) of section 117 of the 1954 Code provides in part as follows:

(b) *Limitations.*—

(1) *Individuals who are candidates for degrees.*—In the case of an individual who is a candidate for a degree at an educational institution * * *, subsection (a) [excluding scholarships and fellowship grants from gross income] shall not apply to that portion of any amount received which represents payment for teaching * * * or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching * * * or other services are required of all candidates * * * for a particular degree as a condition to receiving such degree, such teaching * * * or other services shall not be regarded as part-time employment within the meaning of this paragraph.

As stated previously in this opinion, the stipends received by the plaintiffs represented "payment for teaching * * * in the nature of part-time employment required as a condition to receiving" the stipends in question; and the teaching done by the plaintiffs was not "such teaching" as was required of all candidates for the Ph.D. degree in the classics.

It is true that the Classics Department in 1968 adopted a rule, which was applicable prospectively to graduate students entering that department's doctoral program in 1968 or thereafter, whereby a doctoral candidate must have "teaching experience" in order to qualify for the Ph.D. degree in the classics. Neither the amount nor the nature of the required teaching experience is specified in the rule. However, there is nothing in the record to indicate that the rule requires "all candidates" for the Ph.D. degree in the classics to have the kind or the extent of teaching experience that the plaintiffs had as teaching assistants during the 1967–71 period.

In any event, therefore, the plaintiffs' stipends as teaching assistants would be removed from the scope of subsection (a) of section 117 of the 1954 Code, even if such stipends had been called fellowship grants or scholarships.

It necessarily follows that the plaintiffs are not entitled to recover, and the petition should be dismissed.

### CONCLUSION OF LAW

Upon the trial judge's findings and opinion, which are adopted by the court, the court concludes as a matter of law that the plaintiffs are not entitled to recover, and the petition is therefore dismissed.

**Frank P. SILVER**

v.

**The UNITED STATES.**

**No. 449–72.**

United States Court of Claims.

March 23, 1977.

James J. Orlow, Philadelphia, Pa., atty. of record, for plaintiff.

Donnie Hoover, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, New York City, for defendant.

Before COWEN, Senior Judge, and DAVIS and SKELTON, Judges.

## OPINION

PER CURIAM:

This case comes before the court on plaintiff's exceptions to the recommended decision of Trial Judge George Willi, filed May 26, 1976, pursuant to Rule 134(h). Upon consideration thereof, together with the briefs and oral argument of counsel, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby affirms and adopts the said decision as the basis of its judgment in this case. It is, therefore, concluded that plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF TRIAL JUDGE

WILLI, Trial Judge: Plaintiff, a physician who was engaged in the private practice of obstetrics and gynecology at the time that he was ordered to active duty as a Reserve Captain in the U.S. Army Medical Corps, sues to recover the pay and allowances for that grade for the time that he was in active duty status although unable to perform the duties of a Medical Corps physician because of injuries sustained in an auto accident that occurred prior to his being called up. The defendant now agrees that plaintiff is entitled to captain's pay plus subsistence and quarters allowances totaling $8,359.92 for the period in issue, June 5, 1968 to March 21, 1969. This is the amount that plaintiff claims for these items. Defendant denies, however, that plaintiff is equally entitled to an additional amount of $956.78, representing the $100

per month professional pay authorized by 37 U.S.C. § 302(b)(1) (1970) for a reserve officer called to active duty in the Army Medical Corps for a period of more than 1 year, as plaintiff was. Defendant contends that plaintiff is not entitled to such premium pay since it is undisputed that, because of his disability, he rendered the Army no medical service while in active duty status. The difficulty with that argument is that while Congress certainly could have conditioned entitlement on the actual rendition of professional services, it did not do so. Instead, the unambiguous language of the statute predicates eligibility solely on appointed status, which plaintiff admittedly had. It is therefore held for purposes of this decision that plaintiff is due the gross amount of $9,316.70 for his period of active duty. That determination sets the stage for the real and subsisting dispute between the parties, *viz* the extent to which, on the facts presented,[1] the gross entitlement is subject to reduction to the extent of plaintiff's earnings from the private practice of medicine during his period of active duty. In that regard, the parties' differences are primarily legal rather than factual, plaintiff contending that the outside earnings principle has application only to a period of constructive service following a wrongful separation,[2] not to a time of actual employment on active duty as here involved.

■ This court has uniformly held that a claimant's outside earnings are to be deducted from an award of back pay if such earnings would not have been received by him had he been rendering the Government the employment services called for by the position for which he is found to have been improperly denied compensation. *Jackson v. United States*, 121 Ct.Cl. 405, 414 (1952); *Jaffe v. United States*, 124 Ct.Cl. 755

(1953); *Getzoff v. United States*, 109 F.Supp. 712, 714–15, 124 Ct.Cl. 232, 236–38 (1953). The test simply recognizes that when the Government has a man on its payroll it is entitled to his undivided attention during working hours. From that standpoint it makes no difference whether the Government is paying for the employee's time currently or retroactively. In either case, it is due his entire productive efforts during the hours for which he receives pay as an employee.

■ In resisting cognizance of private practice earnings in determining the ultimate amount of his permissible recovery, plaintiff relies on two Supreme Court decisions, *United States v. Williamson*, 90 U.S. 411, 23 L.Ed. 89 (1874) and *Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). Both announced the general proposition that military service pay is fixed by statute, a matter not here disputed, and neither involved any qualification on the serviceman's right to such pay by reason of earnings from concurrent outside employment. It is true that in rejecting the Government's contention in *Bell*, *supra*, that by analogy to damage principles governing breach of contract a serviceman guilty of disloyalty forfeited his right to pay, the Court noted that " * * * it is to be observed that common-law rules governing private contracts have no place in the area of military pay." 366 U.S. at 401, 81 S.Ct. at 1235. As previously explained, however, a reduction of military pay to take account of earnings received for services that could not have been rendered compatibly with the military service for which pay is otherwise found to be due, implicates no common law contract principles remotely resembling those to which the Court alluded in *Bell*, *supra*.[3]

---

1. A detailed statement of the facts is set forth in the separately numbered findings of fact, *infra*. The factual essentials of the decision are contained herein.

2. *Motto v. United States*, 360 F.2d 643, 175 Ct.Cl. 862 (1966); *Clackum v. United States*, 161 Ct.Cl. 34, 36 (1963); *Garner v. United States*, 161 Ct.Cl. 73, 75 (1963); *Egan v. United*

States, 158 F.Supp. 377, 392, 141 Ct.Cl. 1, 27 (1958).

3. Unlike *Bates v. United States*, 197 Ct.Cl. 35, 453 F.2d 1382 (1972), there is here no claim of a service regulation or practice providing against deduction of civilian earnings.

The active duty period here involved is June 6, 1968 to March 21, 1969. In the calendar years 1968 and 1969 plaintiff earned a total of $104,941 from his civilian medical practice. Finding 14, *infra.* Of that total it has been found on the evidence presented that not less than $9,316.70 was attributable to services rendered by him during regular military duty hours in the period involved. Ultimate Finding of Fact, *infra.* It is therefore concluded that plaintiff must be denied affirmative recovery.