Ross J. LANINGHAM, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 109–81C.

United States Claims Court.

April 13, 1984.

Robert C. Liotta, Washington, D.C., for plaintiff.

Beacham O. Brooker, Jr., Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

This is a military pay case in which plaintiff, an officer in the United States Naval Reserve, seeks the reinstitution of certain disability pay and allowances. Entitlement to this relief emanates from an injury, allegedly sustained in an automobile accident on June 9, 1978, while plaintiff was serving on active duty for training. Jurisdiction in this court is premised on 28 U.S.C. § 1491 and other applicable statutes and regulations.

By his petition, filed on March 13, 1981, plaintiff demands all such pay and allowances in arrears from the date of his injury (June 9, 1978) to September 5, 1979, in addition to all such pay and allowances due him from July 1, 1980 to the date of final disposition. Subsequent to the filing of the petition and answer, the parties filed cross-motions for summary judgment centering on the issue of defendant's liability for such disability payments.

On May 31, 1983, this court issued an opinion on said cross-motions in which it held as follows on the issue of defendant's liability for the indicated periods: [1]

1. See *Laningham v. United States,* 2 Cl.Ct. 535 (1983).

(i) *June 9, 1978 through September 5, 1979:* Defendant's motion for summary judgment was granted, denying plaintiff's request for disability pay and allowances for this period;

(ii) *September 6, 1979 through June 30, 1980:* Defendant's counterclaim for the alleged erroneous payment of disability pay and allowances for this period was denied; and

(iii) *July 1, 1980 to "final disposition":* Plaintiff's motion for summary judgment was allowed entitling him to such benefit payments from July 1, 1980 to and until "the same is properly terminated pursuant to applicable law and regulations."

In its opinion, the court emphasized that the foregoing rulings entitling plaintiff to recover and fixing liability on defendant stemmed solely from the Navy's failure to follow its own regulations. However, said opinion reserved the determination of the recoverable amount for further proceedings, pursuant to RUSCC 42(c), if the parties could not file a stipulation within 31 days as to the amount of plaintiff's entitlement consistent with said opinion. Because the parties could not so stipulate, a trial was held on the issue of the amount of plaintiff's recovery on September 13, 1983.

Based on the evidence adduced during said trial and the applicable law and regulations, as discussed *infra*, plaintiff's specific amount of recovery shall be determined by calculations to be made and provided in accordance with this opinion, *infra*.

## DISCUSSION

Following the trial on the issue of the amount of plaintiff's recovery on September 13, 1983, this court entered an order requiring the parties to file post-trial memoranda setting forth their proposed findings of fact and conclusions of law. That order specifically required the parties, *inter alia*, to set forth their contentions as to the precise (i) gross entitlement by categories; (ii) set-off amounts by categories; and (iii) net entitlements with appropriate citations of authorities.

*Period of Entitlement:*

As a predicate to a discussion of the operative issues, the threshold question appears to be what is the precise period during which plaintiff is entitled to recover such disability pay and allowances. In its opinion on the issue of liability, this court held that plaintiff was entitled to such benefit payments from July 1, 1980, to and until "the same is properly terminated pursuant to applicable law and regulation." In this connection, regulations set forth at paragraph 10 of SECNAVINST 1770.03 provide that, where a reservist otherwise is entitled to physical disability benefits, "pay and allowances shall continue in such cases until final disposition is effected." "Final disposition" in said context envisions a point in time when, pursuant to law or regulation, it is appropriate and permissible to cease such disability payments. Subparagraph 80254(d) of the DOD Military Pay and Allowances Entitlement Manual (DODPM) provides, *inter alia*, that:

A member's entitlement to pay and allowances while disabled terminates upon

(1) Retirement

\*  \*  \*  \*  \*  \*

(4) Discharge from the Reserve component.

Plaintiff was honorably discharged from the U.S. Naval Reserve effective June 1, 1983. He has informed the court that an action in the U.S. District Court for the District of Columbia is currently pending in which he challenges the validity of this discharge. For purposes of the present action, however, both parties uniformly contend, and this court so holds, that all of plaintiff's pay and allowance entitlements should cease on said discharge date. The court therefore shall award plaintiff all pay and allowances legally due to him for the period July 1, 1980, through May 31, 1983, inclusively.

*Elements and Categories of Entitlements:*

Defendant avers, and plaintiff agrees, that given this court's opinion of May 31, 1983, plaintiff "is entitled to the pay and

allowances provided by law or regulation for a member of the Regular Army ... of corresponding grade and length of service ... when he is injured while on active duty training." 37 U.S.C. § 204(g) and (i).[2]

The court concurs that 37 U.S.C. § 204(g) and (i) are the operative statutory provisions which set the outer limits of defendant's liability to make "such pay and allowances" and, concomitantly, plaintiff's entitlements thereto. However, the precursory inquiry must be what such specific entitlements are.

The court notes that § 101(21) of 37 U.S.C. defines "pay" as: "basic pay, special pay, retainer pay, incentive pay, retired pay, and equivalent pay, *but does not include allowances*." (Emphasis added.) In short, it seems clear therefore that plaintiff is entitled to any benefit payments, as "pay," falling within the parameters of basic, special, retainer, incentive or equivalent pay. Nowhere in Title 37 U.S.C. is the word "allowances" defined. Neither plaintiff nor defendant proffered an applicable statutory or regulatory definition thereof, and this court's research failed to unearth a specific definition of the term. Part 3 of the DODPM delineates the various types of benefits considered to be "allowances" by the Department of Defense, however, and includes supplemental benefits such as housing, family, and transportation allowances. Against this background, the court will now pass on the plaintiff's averments of entitlement.

Plaintiff's affidavit, received into evidence without objection as Plaintiff's Exhibit 1, succinctly summarizes his contentions as to the specifically delineated categories of entitlements (*i.e.*, pay and allowances) which are claimed in this action, including the amounts with respect to each for the period July 1, 1980, to the date of his discharge on June 1, 1983. Plaintiff has asserted monetary demands in the

aggregate amount of $167,492.16, and defendant countered with Exhibit 5 which opined plaintiff's gross entitlement aggregating (without any set-offs) $108,661.22. The following "pay and allowances" categories frame the entitlement issues in this case:

(i) Base Pay (BP)

(ii) Basic Allowance for Quarters (BAQ)

(iii) Basic Allowance for Subsistence (BAS)

(iv) Variable Housing Allowance (VHA)

(v) Aviation Career Incentive Pay (ACIP)

(vi) Aviation Officer Continuation Pay (AOCP)

(vii) Hospital Benefits (HB) and

(viii) Accrued Leave (monetary equivalent) (AL).

During the trial on the issue as to the amount of recovery, defendant took specific positions, *infra*, with respect to plaintiff's averments of entitlement, which were further amplified and embellished in its post-trial memorandum. A discussion of each alleged entitlement placed in issue by defendant follows with respect to: (i) plaintiff's demand; (ii) defendant's contentions; and (iii) the court's findings of fact and conclusions of law.

a. *BP, BAS, and BAQ—Promotion:*

The parties are in full agreement that plaintiff is entitled to BP, BAQ, and BAS. They strenuously differ, however, with respect to whether these benefits should be awarded to him after October 1, 1981, on the basis of the rank of Commander or Lieutenant Commander; *i.e.*, the initial question is whether plaintiff was duly promoted to the rank of Commander, effective October 1, 1981. This issue, which must be resolved before a determination is made regarding the amount of plaintiff's entitlements hereunder, has arisen through an unusual panoply of circumstances. Those

---

**2.** See subparagraph 80254(b) of the DODPM, which provides, *inter alia:* "If a member of a Reserve component ... is serving without pay, pay and allowances will begin on the day the member initially incurred the disability or the date the member became disabled to perform

military duties as determined by service medical authorities. ... The rate of pay and allowances applicable is the same rate that the member would have been entitled to if in a pay status at the time the disability occurred."

pertinent facts which can be found from the record are discussed hereinafter.

In approximately June 1982, plaintiff applied to the Board for Correction of Naval Records (BCNR) for the correction of his records to indicate that his rank was Commander. Plaintiff never received a response to his application from the BCNR. Then, approximately ten months later, in response to a telephone request from plaintiff to the Reserve Promotions Branch of the Naval Military Personnel Command in the Washington, D.C. area, a letter was forwarded to plaintiff dated April 26, 1983. This letter came from the Office of the Secretary of the Navy, and was addressed to *Commander* Ross J. Laningham, USNR–R, via the Commanding Officer, Naval Reserve Personnel Center. It informed him that, pursuant to the provisions of 10 U.S.C. § 5911, "the President of the United States temporarily *appoints you a Commander* in the Reserve of the United States Navy ... effective 1 October, 1981." (Emphasis added.) Said letter was signed "For the President" with the name of the Acting Secretary of the Navy. On April 28, 1983, plaintiff then executed a voluntary oath accepting the foregoing temporary appointment, which was notarized and addressed to the Chief of Naval Personnel. (The court observes that the authenticity of said letters of April 26 and April 28, 1983, was in no respect challenged by defendant, and they were received in evidence unimpeached.)

Thereafter, on May 10, 1983, plaintiff was sent a form letter from the Commanding Officer of the Naval Reserve Personnel Center in New Orleans. This letter first congratulated plaintiff on his *"selection for promotion* in the Naval Reserve." (Emphasis added.) It went on to request that plaintiff undergo a physical examination in "the next 60 days," because he had not undergone same within the previous 12-month period. Additionally, the letter stated, "Your appointment *will be issued* when your physical qualification is received and a vacancy occurs for your active duty running mate." Finally, the letter requested that plaintiff should indicate whether he

would accept or decline the appointment, and that he should complete the included medical statement if he chose to accept it. No evidence was submitted on the record as to whether plaintiff filled out and filed the acceptance/declination statement and medical statement. Plaintiff conceded at trial that subsequently he received a certificate of honorable discharge from the U.S. Naval Reserve, effective June 1, 1983, at the rank of Lieutenant Commander.

Defendant claims that the foregoing facts conclusively demonstrate that plaintiff's "alleged" promotion, noticed on April 26, 1983, was invalid. Specifically, it contends that plaintiff's commanding officer did not "tender" a "commission" appointing him to the position of Commander. Additionally, defendant claims that such a commission could not have been legally tendered to plaintiff. As authority for the latter proposition, defendant cites a number of Court of Claims civilian and military pay decisions which have held that a promotion is "consummated" only when the last act required to effectuate it is performed. *See Stuart v. United States*, 219 Ct.Cl. 565, 569, 618 F.2d 119 (1979); *Goutos v. United States*, 212 Ct.Cl. 95, 98, 552 F.2d 922 (1976). Defendant then argues that the last act required by Navy regulations before Naval Reserve officers can be promoted, is confirmation of their physical condition. Consequently, defendant takes the position that plaintiff's promotion was not consummated because his commanding officer did not confirm plaintiff's physical condition as adequate for promotion.

Conversely, plaintiff claims that the April 26, 1983 letter, *supra*, establishes a valid unconditional promotion to Commander. He contends that this letter was duly authorized by the Secretary of the Navy and that defendant did not challenge this authorization. Moreover, plaintiff notes that he was never notified by the Navy that his promotion was terminated or defective in any way.

■ The court believes that although a proper application by the Navy of its own

rules might well have produced a different result, the facts of the instant case mandate the holding that plaintiff was indeed promoted to the rank of Commander, effective October 1, 1981. The wellspring of our analysis is the long-standing proposition that an appointment is not consummated until the last act, legally required by the person or body vested with the appointment power, is performed. *Marbury v. Madison,* 5 U.S. 137, 155–158, 2 L.Ed. 60 (1803); *Goutos,* 212 Ct.Cl. at 98, 552 F.2d 922. The threshold question then becomes what was the last act required by law before plaintiff could be promoted to Commander.

According to the letter of April 26, 1983, plaintiff was at that instant temporarily promoted retroactively to October 1, 1981, pursuant to the standards of 10 U.S.C. § 5911.[3] The only prerequisite to promotion under § 5911 is that a reserve officer's "running mate" in the regular Navy must be promoted. The evidence adduced by plaintiff (the letter of April 26, 1983) makes a *prima facie* showing that this prerequisite was indeed satisfied.

Moreover, this is a case in which evidence disproving plaintiff's position, *i.e.,* that he was duly promoted under § 5911, seems to lie particularly within the knowledge of defendant. While dealing with a similar evidentiary question to that presented here, the D.C. Circuit has stated:

> ... Although a plaintiff generally carries the burden of persuasion on each element of his cause of action, special circumstances may lead a court to shift the burden of persuasion to the defendant on some part of the claim. One special circumstance commonly accepted is that the burden will be shifted where the material

necessary to prove or disprove an element "lies particularly within the knowledge" of the defendant.

> *Nader v. Allegheny Airlines,* 512 F.2d 527, 538 (D.C.Cir.), *rev'd on other grounds,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). Additionally, trial courts have long been permitted to draw adverse inferences with respect to a party who has failed to call witnesses on an issue, if knowledgeable witnesses appear to be within only that party's power to produce. *See Interstate Circuit v. United States,* 306 U.S. 208, 221, 59 S.Ct. 467, 472, 83 L.Ed. 610 (1939); *California-Pacific Utilities v. United States,* 194 Ct.Cl. 703, 718 (1971); *United States v. Warwick,* 695 F.2d 1063, 1069 (7th Cir.1982). In the instant case, once plaintiff made his *prima facie* showing that he was duly promoted pursuant to 10 U.S.C. § 5911, the burden of persuasion must be deemed to have shifted to defendant to show the contrary. Defendant has not only failed to call any witnesses to sustain such burden, but it has adduced no evidence whatsoever to contradict plaintiff's *prima facie* showing. Under such circumstances, this court is compelled to hold that the last act required by law to effect plaintiff's promotion to the rank of Commander has been duly performed.[4]

Defendant's naked contention, that no "commission" was "tendered" to plaintiff through his commanding officer, therefore, does nothing to disprove that an appointment of plaintiff to the rank of Commander was in fact effectuated. Defendant has not pointed to any statutory or regulatory authority, and the court's research has found none, to show that a "commission" must be "tendered" to a Naval Reserve officer through his commanding officer before a promotion becomes efficacious.

---

**3.** 10 U.S.C. § 5911 provides in pertinent part: "Notwithstanding any other provision of law, the promotion of a reserve officer under this chapter shall be made by a temporary appointment if the promotion of his running mate is made by a temporary appointment."

**4.** We note that 10 U.S.C. § 5912, which was not mentioned by either party, requires all permanent and temporary appointments above lieutenant commander in the Naval Reserve to be

made by the President, *by and with the advice and consent of the Senate.* The entirety of the record before us compels the court to adopt the presumption that such provisions were complied with by the Secretary of the Navy before it notified plaintiff of his temporary appointment, particularly, whereas here defendant made no effort to go forward with the evidence to establish the contrary.

■ Moreover, defendant's contention, that an affirmative confirmation of plaintiff's physical condition is required before a promotion can take effect, is not premised on regulations that pertain to 10 U.S.C. § 5911, the statute under which plaintiff was promoted. Instead, defendant's argument is based on a regulation which expressly governs promotions pursuant to an entirely different statute, *i.e.*, 10 U.S.C. § 5910. *See Secretary of the Navy Regulations for Promotion and Attrition of Naval Reserve Officers Pursuant to Title 10, United States Code Sections 5910, 6389, and 6403;* ¶ 1 (1970),[5] 10 U.S.C. § 5910.

Defendant has made no showing that 10 U.S.C. § 5910 or the regulations pursuant thereto are applicable to the promotion of plaintiff. In light of the uncontroverted evidence that the promotion of plaintiff was accomplished pursuant to *§ 5911*, and the lack of any showing that confirmation of a Reserve officer's physical condition is required before a promotion pursuant to § 5911 becomes effective, we hold, on these facts, that *confirmation* of plaintiff's physical condition was not a prerequisite to his promotion.

In its post-trial brief, defendant also points to a provision in the Naval Military Personnel Manual, which conceivably is applicable to the promotion of plaintiff, and which arguably suggests that plaintiff

might not have been qualified for promotion at the time of his notification of such fact in April 1983. *See* Naval Military Personnel Manual, ¶ 1880120(1)(e). This subparagraph states that officers classified in "Physical Risk 5" are "not physically qualified for promotion." The administrative record reveals that plaintiff was classified as Physical Risk 5 on May 4, 1982, approximately one year prior to plaintiff's notification of his promotion on April 26, 1983, but six months after the October 1, 1981 effective date of same.[6]

■ It is unnecessary for this court to rule, however, on the issue of whether plaintiff's promotion was illegal, as contended by defendant, because it allegedly violated the standards of the Naval Military Personnel Manual. All that defendant's citation of this manual shows is that the Navy might have had grounds upon which to withhold or terminate plaintiff's promotion. Defendant has not proffered one scintilla of evidence establishing that it took affirmative steps to withhold or rescind its temporary appointment of plaintiff to the rank of Commander on April 26, 1983.[7] The evidence, if any existed, needed to prove an attempt to revoke plaintiff's appointment appears to lie primarily, if not exclusively, within the reach of defendant. For this reason, and because plaintiff would otherwise face the formidable task

---

5. The regulation provides, in pertinent part, that officers will be appointed "upon confirmation of their physical qualifications, and at such time as their running mates become eligible for promotion."

6. Paragraph 2220150 of the Naval Military Personnel Manual, not cited by either of the parties, provides that no officer of the Naval Reserve "on active duty" may be promoted "until, as reflected by the officer's most recent physical examination, it has been determined that the officer is physically qualified for promotion." This paragraph further provides that officers awaiting an appearance before, or final action on the recommended findings of, a physical evaluation board are not to be considered physically qualified. Although plaintiff may not have been "physically qualified" for promotion under the standards of the foregoing paragraph, plaintiff does not appear to come under its purview in any regard because he was not on "active

duty" after September 1979. *See* discussion of definition of "active duty," *infra.*

7. The only arguably relevant evidence proffered by defendant on this point was (1) the letter sent from plaintiff's commanding officer on May 10, 1983, *supra,* which appears to show that plaintiff was notified of his *"selection for promotion"* by his commanding officer shortly *after* he was notified of his *actual* temporary promotion by the Secretary of the Navy; and (2) plaintiff's testimony that he was discharged at the rank of Lieutenant Commander on June 1, 1983. Defendant also introduced the testimony of an officer of the Naval Financial Office in Cleveland who testified that his office was not aware in August 1983 that plaintiff had been promoted the previous April 26. None of these items of evidence is probative, and certainly none is dispositive, on the question of whether plaintiff's promotion was in fact terminated or rescinded.

of proving a "negative averment," defendant must bear the burden of showing that plaintiff's appointment as Commander was terminated or revoked. *International Harvester Co. v. Ruckelshaus*, 478 F.2d 615, 643 (D.C.Cir.1973). Because no such creditable evidence was adduced by defendant, this court is compelled to find that the Navy did not revoke or even attempt to revoke plaintiff's valid promotion.[8]

Because the totality of the facts compels a finding that plaintiff was promoted to the rank of Commander effective October 1, 1981, we further hold that plaintiff is entitled to receive BP, BAQ, and BAS at the rate established for Lieutenant Commanders from July 1, 1980 until September 30, 1981, and at the rate established for Commanders from October 1, 1981 to May 31, 1983.[9]

b. *Variable Housing Allowance (VHA):*

■ The parties are also in agreement that plaintiff is entitled to receive VHA, pursuant to 37 U.S.C. § 403(a)(2). The VHA provisions of § 403 entitle members of the armed forces, who are eligible for BAQ and who are assigned to duty in a high cost housing area, to an allowance to compensate them when the average cost of housing incurred by members of equivalent rank living in the same area exceeds the average basic allowance for quarters by 15 percent or more. The parties differ, however, with respect to where plaintiff was "assigned to duty," during the pertinent period herein, for purposes of calculating the VHA benefits due him. Plaintiff claims that he was assigned to the Washington, D.C. metropolitan area, where he apparently lived continuously since 1980 and where he received medical treatment and appeared before various medical boards. Defendant disagrees, claiming that plaintiff was assigned to Norfolk, Virginia, throughout the period of his disability.

The regulations applicable to the VHA statutory provisions, the Joint Travel Regulations (JTR), provide in ¶ M4550 that VHA is computed on the basis of a member's permanent duty station. The regulations provide further that:

> A member's old permanent duty station is considered to be the permanent duty station for [VHA] entitlement purposes through the day prior to the day that the member reports at the new permanent duty station in compliance with *permanent change-of-station orders.* (Emphasis added.)

*Id.* A paragraph of the JTR which relates specifically to VHA for hospitalized members of the uniformed services states in pertinent part that:

> [T]he hospital to which a member is *transferred* will be considered to be the member's permanent duty station when a member is transferred ... from a duty station in the United States to a hospital within the United States for observation and treatment *when it is determined that prolonged hospitalization is required, and appropriate orders associated with the prolonged hospitalization*

---

**8.** Plaintiff submitted documents with his post-trial brief, purporting to be a signed confirmation of plaintiff's physical condition sent in response to the May 10, 1983 letter, as well as a photocopy of plaintiff's Navy identification card, with the rank of Commander, issued May 26, 1983. Although the court cannot consider, and has not considered, these documents (which were neither offered nor received in evidence), it might be surmised therefrom that the Navy did not attempt to revoke plaintiff's temporary appointment, once made, because if the foregoing confirmation was authentic and acceptable, the Navy might not have had grounds upon which to terminate the appoint-

ment. We also note that 10 U.S.C. § 5779, the statute under which temporary appointments of Reserve officers were terminated at will by the President or officers with duly delegated authority, was repealed in 1980. *Cf. D'Arco v. United States*, 194 Ct.Cl. 811, 814–16, 441 F.2d 1173 (1971).

**9.** The parties do not dispute that plaintiff would be entitled to the pay and allowances of a Commander after a temporary appointment as Commander, even if he did not receive a permanent appointment to that rank.

*determination are issued.* (Emphasis added.)

*Id.,* ¶ M4554.

Plaintiff has pointed to portions of the administrative record, including the endorsement sheet for his Notice of Eligibility (NOE), which show that he "[r]eported as a patient to the National Naval Medical Center in Bethesda, Maryland," in December 1979 and that he was examined at various facilities of the United States armed forces in the Washington, D.C. metropolitan area from 1980–81. He has presented no evidence, however, and the court has found nothing in the administrative record, which shows (i) that he was "transferred" to a hospital in the Washington area, (ii) that a determination was made that prolonged hospitalization was required, or (iii) that "appropriate orders associated with the prolonged hospitalization" were issued. To the contrary, the referenced endorsement sheet indicates that plaintiff was *not* "transferred" from Norfolk to the Washington area, but rather, simply "reported" as explained, *supra.* Thus, the factual showing made by plaintiff on this record is patently insufficient to qualify him for VHA applicable to members assigned and "transferred" to the Washington, D.C. metropolitan area under the standards of the referenced JTR. Accordingly, we hold that plaintiff is entitled to VHA at applicable rates for a Lieutenant Commander in the Naval Reserve assigned to his last duty station, Norfolk, Virginia, from October 1, 1980 to September 30, 1981, and to VHA at applicable rates for a Commander in the Naval Reserve assigned to Norfolk between October 1, 1981 and June 1, 1983.

In its reply to defendant's post-trial memorandum, plaintiff also presented the novel argument that if the court determines that his VHA should be calculated based on his assignment to Norfolk, then his "assignment" to the Washington, D.C. area constituted "Temporary Additional Duty," thereby qualifying him for a per diem travel allowance under 37 U.S.C. § 404. Such a claim, if granted, would allegedly entitle plaintiff to nearly $75,000 for the period at issue in this litigation. This claim was not raised in plaintiff's petition, at trial, or even in plaintiff's initial post-trial brief. Thus, defendant has not had an opportunity to respond to the claim.

For the reasons mentioned in our discussion of plaintiff's claim for ACIP, *infra,* this court cannot consider plaintiff's pleading to have been amended to include his alternative claim for per diem travel allowances. Moreover, even if plaintiff's complaint were deemed to include this alternative claim, the court notes that 37 U.S.C. § 404 clearly requires members of a uniformed service to be performing travel *under orders* before they are entitled to per diem travel allowances. The record is totally devoid of any evidence that plaintiff was travelling under orders for the Naval Reserve at any time between 1980 and 1983.

### c. *Aviation Career Incentive Pay (ACIP):*

ACIP is a type of incentive pay provided under 37 U.S.C. § 301a, which is designed to entice regular and reserve aviation officers to continue in aviation service on a career basis. The parties do not dispute the fact that plaintiff had fulfilled the necessary aviation service requirements to be eligible for ACIP by 1979. Instead, the parties dispute the question of whether plaintiff is eligible for ACIP following his grounding on September 6, 1979, and the issuance of his NOE for disability effective as of that date.

Defendant contends, pursuant to the statute, that ACIP should be based on "the regular and frequent performance of operational or proficiency flying duty required by orders." 37 U.S.C. § 301a(a)(1). Because plaintiff did not perform aviation duty and was not under orders to do so after September 5, 1979, defendant argues that plaintiff is therefore not entitled to ACIP.

Defendant also concedes, and correctly so, that entitlement to ACIP is statutorily subject to regulations. The regulation ar-

guably applicable to plaintiff, who was incapacitated not as a result of the performance of flying duty, is paragraph 20127 of the DODPM, which provides in pertinent part as follows:

An officer who is medically incapacitated will be considered qualified for aviation service through the fifth month following the month of incapacitation. A period of *disqualification* ... for an officer medically incapacitated *starts* on the first day of the sixth month following the month of incapacitation if incapacitation continues for more than 6 months. *No entitlement to ACIP exists during a period of disqualification.* Entitlement for the period of incapacity before disqualification is shown in subparagraphs that follow:

a. *Officer Entitled to Continuous ACIP.*[10] When an officer who is entitled to continuous ACIP is incapacitated *not as the result of performing flying duty,* entitlement continues past the date of incapacitation and through the day before the date of disqualification for aviation service. (Emphasis added.)

Defendant contends that under this regulation, plaintiff could *only* be entitled to ACIP for the immediate five-month period following the month of his incapacitation, which would have expired in February 1980. Because defendant contends that this period of possible eligibility is "prior to the period at issue in this case" (the court here assumes defendant to mean prior to July 1, 1980), it argues that plaintiff is ineligible for ACIP in any case.

In contrast, plaintiff contended at all times prior to and during trial that he was entitled to ACIP for the period between July 1, 1980 and June 1, 1983, as an element of the "pay and allowances" due him under 37 U.S.C. § 204 and 10 U.S.C. § 6148 (however, no claim for ACIP prior to July 1, 1980 was prayed for in his petition). Plaintiff's first post-trial memorandum asserted the additional claim that even though he had received pay and benefits between September 6, 1979 and July 1, 1980, he did not receive ACIP during said period. Accordingly, he stated that ACIP should have accrued to him from the effective date of his NOE (September 6, 1979) to the date of his discharge (June 1, 1983). Plaintiff then asked the court "to reconsider the effective date of its order as it relates to [ACIP]" in his subsequent Reply to Defendant's Proposed Findings of Fact and Conclusions of Law. He cited therein DODPM ¶ 20127(a), *supra* (for the first time in this litigation), and claimed that said regulation entitles him to ACIP between September 6, 1979, and March 17, 1982, the day he was allegedly found disqualified for aviation service.

Thus, plaintiff essentially seeks to amend his pleadings via his post-trial briefs so as to include an additional claim for ACIP from September 6, 1979 to June 30, 1980.[11] Plaintiff apparently desires to invoke RUSCC 15(b), even though he has not specifically made a motion to this effect. This rule, entitled "Amendments To Conform to the Evidence" (identical to its counterpart in the Federal Rules of Civil Procedure), provides in pertinent part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the

---

10. The administrative record indicates that plaintiff was entitled to "continuous" ACIP, pursuant to subparagraph (a), as of 1979.

11. Plaintiff's petition did not state a claim for any benefits accrued between September 6, 1979 and June 30, 1980. Plaintiff's subsequent motion for summary judgment, filed March 1, 1982, might arguably have incorporated a claim for ACIP from September 6, 1979 to July 1, 1980, because it requested all "pay and allowances pursuant to 10 U.S.C. § 6148 and 37 U.S.C. § 204(i) from June 9, 1978 ... to the date of judgment, less appropriate offsets." The court does not consider plaintiff's pleadings to have been amended at that time to include a claim for ACIP during the referenced period, however, because plaintiff made no motion to amend his pleadings, pursuant to RUSCC 15(a), and because he did not even raise the claim of his entitlement to ACIP during said period until after trial on the issue of the amount of recovery.

pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues....

■ The courts have generally accorded Rule 15(b) a liberal construction, so as to enable controversies to be tried on the merits. *Robbins v. Jordan*, 181 F.2d 793, 794 (D.C.Cir.1950); *Parsons v. Doctors for Emergency Services*, 81 F.R.D. 660, 663 (D.Del.1979). Nevertheless, the application of this rule must be limited to issues which were actually tried by express or implied consent of the parties, so as to prevent prejudice to the opposing party and permit an opportunity to defend all new claims. *Browning Debentures Holding Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir.1977). Consequently, an absolute minimum requirement before Rule 15(b) can be invoked after trial has been that evidence must have been introduced at trial pertaining to the factual issue(s) implicit in the new claim. *See, e.g., Dunn v. Trans World Airlines, Inc.*, 589 F.2d 408, 413 (9th Cir.1978); *Greathouse v. Babcock & Wilcox Co.*, 381 F.Supp. 156 (N.D.Ohio 1974).

■ In the instant case, a significant factual issue implicit in plaintiff's claim for ACIP between September 6, 1979 and July 1, 1980 is whether plaintiff actually received ACIP during said period. No evidence whatsoever was adduced at trial on this issue, and the issue does not appear to have been raised in the administrative record. This court therefore can only consider plaintiff's claim of entitlement to ACIP between July 1, 1980 and March 17, 1982.

It is clear from the pertinent statutes and regulations that plaintiff is not eligible to receive ACIP during the foregoing period. The only regulation pertaining specifically to ACIP for disabled reserve officers, ¶ 80254(b)(2)(d) of the DODPM, does not

provide ACIP for officers such as plaintiff who are disabled while on active duty but not as a result of the performance of flying duties. Additionally, ¶ 20127 of the DODPM, *supra*, cited to by plaintiff as applicable (presumably by virtue of 37 U.S.C. § 204(g) and (i)), clearly would only entitle plaintiff to ACIP between September 6, 1979 and February 29, 1980, the last day of the fifth month after the month of his medical incapacitation. It is apparent from the text of ¶ 20127 that the period of medical incapacitation for plaintiff after February 29, 1980, which continued until the date of his discharge, was a "period of disqualification," during which he would not be entitled to ACIP. Hence, the portion of ¶ 20127(a) relied on by plaintiff, stating that entitlement continues "through the day before the date of disqualification for aviation service" (*i.e.*, March 17, 1982), is inapposite, because ¶ 20127(a) only applies for "the period of incapacity *before* disqualification." *See* ¶ 20127, *supra*. We hold, therefore, that plaintiff may not recover an award of ACIP from the Navy.

d. *Aviation Officer Continuation Pay (AOCP):*

AOCP is a type of special pay, given as a continuation bonus, for certain aviation officers who agree to extend their period of active duty for at least one year. *See* 37 U.S.C. § 301b (1980). This type of pay first came into existence on October 1, 1980, shortly after the passage of Pub.L. 96–342, § 806, 94 Stat. 1095, on September 8, 1980. There are six specific statutory requirements, stated conjunctively, for eligibility for AOCP under 37 U.S.C. § 301b, three of which provide that an officer must:

1) be entitled to ACIP, under 37 U.S.C. § 301a;

2) be qualified to perform operational flying duty,[12] under 37 U.S.C. § 301a(a); and

---

12. "Operational flying duty" is defined in SEC-NAVINST 7220.79 (1981) as *"Flying performed*

*under competent orders* by a designated officer while serving in assignments in which basic

3) execute a written agreement to remain on active duty in aviation service for at least one year.

Plaintiff does not qualify for AOCP under any of the foregoing three requirements. The immediately preceding discussion shows that plaintiff unquestionably was not entitled to ACIP after February 29, 1980. Moreover, the record clearly indicates that plaintiff was not qualified to perform operational flying duty after September 1979, and also contains no evidence that plaintiff executed a written agreement to remain on active duty in aviation service. Plaintiff therefore must be held not to be entitled to an award of AOCP.

e. *Accrued Leave:*

██ Plaintiff also makes a claim for the monetary equivalent of the accrued annual leave he would have earned between July 1, 1980 and June 1, 1983, had he been on active duty, but which he did not take. Defendant opposes this claim on the ground that the statute authorizing the accrual of annual leave for Naval Reserve Officers, 10 U.S.C. § 701, only authorizes the accrual of annual leave during periods of "active service," and that plaintiff was not in active service after July 1, 1980.

The court agrees with defendant that plaintiff is not entitled to the accrued leave he seeks. It is clear from the statute that aside from specially exempted classes of persons (of which plaintiff is not a part), members of the armed forces must be in "active service" in order to accrue annual leave. "Active service" is defined in 10 U.S.C. § 101(24) as "service on active duty." "Active duty," in turn, is defined in 10 U.S.C. § 101(22) as "full-time duty in the active military service of the United States. It includes full-time training duty, annual training duty, and attendance ... at a [military service] school...."

Plaintiff has adduced no evidence that he served in any of the foregoing categories of active duty after 1979, and hence cannot be considered to have been in "active service" during this period. He has therefore shown no entitlement to the relief he seeks and may not recover.

f. *Hospital Benefits:*

██ Plaintiff further claims that he is entitled to all of the private medical expenses that he incurred after 1980, which he categorizes as "hospital benefits." In support of this claim, plaintiff has submitted only his own statement that he incurred charges of approximately $4,000 from three private physicians, as well as prescribed medication totalling approximately $500.00. He argues further that he was obligated to incur these private medical expenses because he was unable to avail himself of Navy facilities after his NOE was terminated in 1980, and that he was "entitled to receive medical, hospital, and other treatment appropriate for the disability at government expense." *See* DODPM, Table 8–2–4, notes 2 and 3.

Defendant opposes this claim by alleging that plaintiff has neither established nor stated that he has paid the bills that were incurred, and that he also has failed to exhaust administrative remedies because he has not even presented any such bills to the Navy for payment. Moreover, it argues, pursuant to 10 U.S.C. § 6203, that reservists are entitled to have the Navy pay for private medical treatment only where "necessary" and where "not available from a Federal source."

Curiously, plaintiff failed to introduce either the testimony of, or bills from, any of the three doctors he allegedly consulted. Moreover, he provided no proof whatsoever that the treatment he received was "necessary" for the disabilities he incurred from the 1978 accident, or that he had applied or been rejected for treatment from the Navy. It is sufficient to say that entitlement to permissible statutory relief requires something more than a self-serving bare formal

flying skills are maintained in performance of assigned duties as determined by the Secretary of the Navy." (Emphasis added.)

demand, as here. Plaintiff therefore may not recover under this claim because his proof is fatally defective. Accordingly, it is unnecessary to reach defendant's alternative positions.

*Set-off of Outside Earnings, Debts, and Taxes:*

■■■ Defendant argues that all of plaintiff's civilian earnings received between July 1, 1980 and June 1, 1983, amounting to $9,232.15, should be set off against the gross amount due plaintiff. It claims that the government has a common law right to deduct a claimant's outside earnings from a back pay award when those earnings would not have been received by him had he been performing the services to which the award related. Plaintiff disputes this contention, citing a number of regulations which state that a member's "right" or "entitlement" to disability benefits "may continue," or "is not affected," by the resumption by the member of civilian employment. *See* DODPM, § 80254(c), and Table 8–2–4, note 4. Additionally, plaintiff claims that even if the common-law rule cited by defendant applies, plaintiff's earnings should not be set off against his award because his civilian employment was performed part-time, during the evening hours, and "could have been carried on concurrently with his active duty."

A long line of Court of Claims cases confirms the proposition that the government has a right to deduct an employee's outside earnings, unless service regulations or practice are to the contrary. *Silver v. United States,* 213 Ct.Cl. 388, 390–91, 551 F.2d 295 (1977); *Bates v. United States,* 197 Ct.Cl. 35, 453 F.2d 1382 (1972); *Getzoff v. United States,* 124 Ct.Cl. 232, 236–38, 109 F.Supp. 712 (1953). This rule has been utilized as an analog to the private contract law principle of mitigation of damages. *Bates,* 197 Ct.Cl. at 40, 453 F.2d 1382. Consequently, the standard used for set-off of outside earnings in Court of Claims precedent has been whether such income could have been earned by an employee had he been serving in the position he held

before his disability. *Silver,* 213 Ct.Cl. at 390, 551 F.2d 295.

In the instant case, it is apparent from the language and legislative history of 10 U.S.C. § 6148 (the statute affording disabled reservists the same benefits as regular servicemen on active duty) that Congress intended that disabled servicemen should not be penalized as a result of incurring disabilities. *See* H.Rep. No. 1680, 77th Cong., 2d Sess. (1942) (Committee report on predecessor statute of 10 U.S.C. § 6148). The court has found no evidence of legislative intent, however, to provide any benefits to disabled reservists that may be characterized as, or would have the effect of, a "windfall." Consequently, the court reads the sections of the DODPM, *supra,* proffered by plaintiff, as stating only that plaintiffs do not lose the right to receive disability benefits if they resume civilian employment after becoming disabled. Hence, the Navy is not precluded by its regulations from deducting the outside earnings of plaintiff from its award of disability benefits.

Once we apply the standards of the *Silver* case, *supra,* for deduction of outside earnings, we find that plaintiff's assertion that he could have carried on the same type of civilian employment in 1981–83 if he had been on active duty is defective for want of proof. Plaintiff has not shown in any respect that he could have obtained the same type of civilian work had he been in Norfolk on active duty as he obtained while not on active duty in the Washington, D.C. area. He also failed to show that he had ever performed part-time civilian employment while on active duty in the nearly 20 years of his career with the Naval Reserve, or that engaging in such employment while on active duty would have been permissible. Thus, we hold that the entire amount of plaintiff's outside earnings must be set off against his gross award.

■■■ Defendant also contends that plaintiff owes a debt of $7,371.00 to the Veterans Administration, which should be set off against his award. Plaintiff acknowledges that he owes the Veterans Administration

said amount, and leaves the question, whether the government should deduct this debt from his award, up to the court's discretion. The court is cognizant of the long-settled rule that "[t]he government has the same right which belongs to every creditor to apply unappropriated monies of his debtor, in his hands, in extinguishment of the debts due him." *United States v. Munsey Trust*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1974). Accordingly, the court holds that the government is entitled to set off the total amount of the debt owed by plaintiff to the Veterans Administration.

Finally, defendant requests that the court deduct the total amount of federal income withholding taxes (estimated to aggregate $12,578.91) due it from plaintiff's award. Plaintiff questions the propriety of this court's determining the proper amount of withholding tax, and suggests that the court should enter judgment for the amount due plaintiff and then let plaintiff be responsible for filing his tax returns and paying his taxes. Alternatively, plaintiff suggests that the court should enter judgment for the amount due less the amount of tax which the Navy Finance Center determines should be withheld and paid to the Internal Revenue Service. The court agrees with defendant that it should be permitted to set off against the gross award any and all federal income taxes required to be withheld, and so holds. *See Phillips v. United States*, 227 Ct.Cl. 532, 533 (1981). A recalculation of the withholding taxes is required, in any event, because the above amount is apparently understated inasmuch as defendant's calculation of the gross amount due to plaintiff incorporated the erroneous assumption that plaintiff retained the rank of Lieutenant Commander throughout the three-year period in question.

## CONCLUSION

Consistent with the foregoing, the ultimate holding of the court as to the plaintiff's right to recover, pursuant to the iden-

tified categories of entitlement, is summarized as follows:

(a) plaintiff was in fact temporarily promoted to the rank of Commander, effective October 1, 1981;

(b) plaintiff is entitled to BP, BAS, and BAQ for the period July 1, 1980 through May 31, 1983, inclusively;

(c) plaintiff's pay and allowance entitlements under (b), *supra*, shall be calculated at the rank of Lieutenant Commander from July 1, 1980 through September 30, 1981, and thereafter to May 31, 1983, at the rank of Commander;

(d) plaintiff is entitled to VHA for a member of the Naval Reserve assigned to Norfolk, Virginia, for the period October 1, 1980 to September 30, 1981, at the rates applicable for a Lieutenant Commander, and thereafter to May 31, 1983, at the applicable rates for a Commander; and

(e) defendant may set off against the gross entitlements of plaintiff under items (a), (b), (c), and (d), *supra,*

(i) earnings of plaintiff in the aggregate amount of $9,232.15;

(ii) plaintiff's debt to the Veterans Administration in the total amount of $7,371.00; and

(iii) all applicable federal income taxes required to be withheld on the gross recovered amount.

IT IS THEREFORE ORDERED that plaintiff is entitled to judgment in an amount which, when calculated, will reflect the *net* of items (a), (b), (c), (d), and (e), *supra.*

Since a computation is required to determine the precise amounts to which plaintiff is entitled pursuant to items (a), (b), (c), and (d), as well as to determine the amount of federal income taxes, [(e)(iii)] *supra*, required to be withheld, this court HEREBY, *sua sponte*, issues a "Call" on defendant, *i.e.*, Secretary of the Navy (Navy Finance Center), pursuant to RUSCC 34(d)(B) and 28 U.S.C. § 2507(a), to make appropriate computations in schedule form, consistent with this opinion, and file the same with this court by memorandum on or before

Wednesday, May 16, 1984. The required computations, embracing the period of entitlement commencing on July 1, 1980 and ending on May 31, 1983, shall calculate plaintiff's entitlements on a gross quarterly basis for BP, BAS, BAQ, and VHA. The appropriate monthly rate shall be shown with the extensions being the product of multiplying by the number of months. Finally, the foregoing gross entitlements, as to each category, shall be aggregated, against which shall be offset (i) the outside earnings of $9,232.15, (ii) the debt to the Veterans Administration in the amount of $7,371.00, and (iii) the federal income taxes required to be withheld on the gross entitlements, and a net amount due to plaintiff shall be determined.

IT IS FURTHER ORDERED that within 30 days after the clerk has served notice of the filing of said computation, each party shall file with the clerk its acceptance or rejection of the computation. Any rejection(s) shall be accompanied by a statement *particularizing* the reasons therefor, with appropriate citations of authorities.

Following the receipt of the foregoing, this court will issue a supplement to this opinion requesting the clerk of the court to enter judgment in favor of plaintiff for the specific *net* dollar amount consistent with this opinion.