Per Curiam: This case was referred to Trial Commissioner Louis Spector pursuant to the provisions of Rule 47(c) (2) for determination of the amount of recovery to which plaintiff is entitled under the decision of the court entered on May 12,1967,180 Ct. Cl. 120, 376 P. 2d 878. The commissioner filed a report, including his findings of fact, opinion and recommended conclusion of law on September 25, 1968. Plaintiff filed exceptions to the commissioner’s opinion, findings of fact and recommended conclusion of law. Defendant took no exceptions and urged the court to adopt the commissioner’s opinion and recommended conclusion of law. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the opinion, findings and recommended conclusion of law of the trial commissioner, with a minor addition, it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. There *321 fore, it is concluded that plaintiff has sustained no compensable damages and bis petition is dismissed.
OPINION OP COMMISSIONER
Spector, Commissioner:
Plaintiff, a former United States Marine, sued to recover active duty pay and allowances, alleging tbe illegality of (1) an administrative reduction-in-grade, and (2) an undesirable discharge effective November 2, 1961. In its decision dated May 12, 1967, this court granted plaintiff’s motion for summary judgment, denied defendant’s cross-motion and counterclaim, and held plaintiff was entitled to recover (1) the difference between the pay and allowances of a Sergeant (E^f) and a Lance Corporal (E-3) for the period from October 4, 1961 to November 2, 1961; and (2) the active duty pay and allowances of a Sergeant (E-4) from November 2,1961 to August 14, 1966, the date on which his term of enlistment would normally have expired. The exact amount of recovery was reserved for further proceedings under Eule 47(c)(2), “including a determination of the amount of plaintiff’s civilian earnings since his illegal discharge.”
The United States General Accounting Office has furnished a report and supplemental report demonstrating that the total amount of pay and allowances due plaintiff in accordance with the judgment is $19,683.84. However, a stipulation by the parties recites that during the period covered by plaintiff’s claim, he earned $24,353.99 from civilian employment.
It is well established that civilian earnings must be “set off” in mitigation of the amount otherwise due plaintiff. See Motto v. United States, 175 Ct. Cl. 862, 360 F.2d 643 (1966) ; Middleton v. United States, 175 Ct. Cl. 786 (1966); Shaw v. United States, 174 Ct. Cl. 899, 357 F.2d 949 (1966).
Here, since the civilian earnings exceed the amount of entitlement, the latter is, in effect, obliterated.
Plaintiff would avoid this result by citing medical expenses (which would have otherwise been provided by the military) incurred during the period of claim, in the amount of $1,246.80. He also cites college tuition payments during the same period in the amount of $1,001.00, which he asserts *322 would liave been paid by the United States had he received a discharge under honorable conditions.
Aside from the fact that the tuition payments constitute veterans’ benefits, not related to the pay and allowances awarded by this court and the further fact that they are not apparently barred by an undesirable discharge, these payments ($1,001.00) together with the medical expenses ($1,246.80), when added to the pay and allowances found due by the General Accounting Office ($19,683.84), do not equal or exceed plaintiff’s civilian earnings for the same period ($24,353.99).
As a result, plaintiff further urges that this is a case in which civilian earnings should not be used in mitigation at all because it is a well known fact that enlisted personnel on active duty very often engage in the practice of “moonlighting” (off-duty civilian employment) to supplement their income. Even if it is assumed, however, that this plaintiff (who was not “moonlighting” at the time of discharge) would have been so engaged at some time thereafter had he remained on active duty, there is no precedent which suggests that the well established rule of “setoff,” or mitigation above noted, is vitiated thereby. The court does not have before it, and does not pass upon, the case of a serviceman who was actually “moonlighting” at the time of his discharge (or shortly before). [This last sentence is inserted as the language of the court.]
It follows that plaintiff’s entitlement is exceeded by his civilian earnings, and that he is not entitled to judgment. The petition should accordingly be dismissed.
FINDINGS op Fact
1. On cross-motions for summary judgment, plaintiff, a former United States Marine, was held entitled to recover “(1) the difference between the pay and allowances of a Sergeant (E-4) and a Lance Corporal (E-3) for the period from October 4,1961 to November 2,1961; and (2) the active duty pay and allowances of a Sergeant (E-4) from November 2, 1961 to August 14,1966, the date on which his term of enlistment would normally have expired.”
2. Defendant’s cross-motion for summary judgment and *323 counterclaim were denied. The exact amount of plaintiff’s recovery was “reserved for further proceedings under Eule 47 (c) (2), including a determination of the amount of plaintiff’s civilian earnings since his illegal discharge.”
3. In response to plaintiff’s motion for call on the United States General Accounting Office, that agency has furnished a report and a supplemental report, finding that the total amount of pay and allowances due plaintiff in accordance with the judgment is $19,683.84.
4. This sum is comprised of pay, basic allowance for quarters, clothing allowance, and commuted rations. It does not reflect plaintiff’s civilian earnings.
5. In a response filed October 11, 1967, “defendant states that the said Eeport is acceptable. However, further proceedings are required pursuant to Eule 47 (c), for the determination of applicable deductions, e.g., outside civilian earnings.”
6. Defendant’s letter of December 5, 1967, states that “it would appear that your client is also entitled to recover medical expenses actually incurred in the amount of $1,246.80. The total amount of recovery would appear to be $20,930.64.” This item of medical expense has since been embodied in a Stipulation of Counsel filed August 9,1968.
7. Said stipulation further provides “that during the period covered by plaintiff’s claim he earned from civilian employment the following amounts:
1961_ No civilian earnings
1962 _ $4, 646. 68
1963 _ 4, 933. 66
1964 _ 5,110. 43
1965 _ 5,493. 91
/ 8.5 \ 1966 jg— X$5,885.63)■ Total civilian earnings 4,168.99 §24,353.99
During this period plaintiff was employed at the following hourly rates of pay:
January 1,1962, to October 22,1962, at §2.20 per hour
October 23,1962, to October 22,1963, at §2.30 per hour
October 23,1963, to October 22,1964, at §2.37 per hour
October 23,1964, to November 24,1965, at §2.47 per hour
During the foregoing periods, the normal working week was forty (40) hours.”
*324 8. Defendant’s aforementioned letter of December 5,1967, suggests “that a stipulation dismissing the petition be filed on the grounds that your client’s civilian earnings are in excess of the amount he would be entitled to recover under the Court’s opinion in the case.”
9. Plaintiff’s counsel has declined to concur in this suggestion nor to accept the General Accounting Office report, asserting in letter of September 12, 1967, that “I propose to object ito the deduction of the civilian earnings of the plaintiff from the amount of his claim on the theory that under the regulations of the Marine Corps personnel are permitted to hold outside employment so long as such employment does not interfere with the performance of their military duties. It is a matter of common knowledge that a substantial portion of enlisted service personnel do hold outside employment and the services apparently recognize that it is necessary for most of their married enlisted personnel to hold such employment in order to properly support their families.”
10. In letter of January 10, 1968, plaintiff’s counsel elaborates on the foregoing, observing that “plaintiff, during the period covered by his claim, was employed in a clerical capacity in a chain store. As you undoubtedly know, individuals so employed are paid on an hourly basis and the hourly rate of pay is a comparatively low one. The only way in which the plaintiff obtained the earnings in question during the period of his claim was by working many hours of overtime each year.”
11. Plaintiff also asserts that the “illegal discharge of the plaintiff, of course, destroyed the equity which he had built up in [his] retired pay” and that some allowance should be made for this.
12. The aforementioned letter of January 10, 1968, also • asserts that plaintiff “had he received a discharge under honorable conditions from the United States Marine Corps, would have been entitled to receive a tuition grant from the United States and perhaps a monetary allowance for his suppoii; while attending classes at the University of Louisville.”
13. The stipulation of August 9, 1968, states “that the plaintiff, during the period of his claim, attended classes *325 at the University of Louisville during 1962, 1963, 1964 and 1965, for a total of eleven (11) semesters and that he paid tuition while attending the University of Louisville at the rate of from approximately $154 to $170 per semester, amounting to a total of $1,001.00.”
14. Finally, the stipulation acknowledges that the following documents may be introduced into evidence for consideration of the commissioner and the court in determining the amount of the judgment to be entered by the court in this cause:
1. A memorandum dated 12 May 1965 from the Assistant Chief of Staff, G-l, to the Chief of Staff, at Headquarters, United States Marine Corps, relating to off-duty civilian employment of Marine Corps personnel.
2. A pamphlet issued by the Air Force Compensation Study Group, entitled “Adjustments to Military Pay and Allowances FY 66,” with subheading “Deficiencies in Military Compensation.”
15. The first document mentioned is entitled “Moonlighting,” a term employed to describe off-duty employment. It is a comprehensive statistical study of the practice.
16. There is nothing in the record to indicate that this plaintiff was engaged in “moonlighting” at the time of his discharge, nor that opportunity existed for off-duty employment in Haiti, his duty station at the time of discharge.
17. The second document above mentioned illustrates that inadequate pay at the lower grades 'has contributed to the practice of “moonlighting.”
18. The aforementioned stipulation followed a pretrial conference held July 26,1968, to facilitate completion of the stipulation, and reservation of the issues which plaintiff wished to submit.
CONCLUSION or Law
Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff has sustained no compensable damages, and the petition is hereby dismissed.