Sheridon GROVES, M.D., Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 156–89C.

United States Court of Federal Claims.

Nov. 12, 1993.

Louis P. Font, Boston, MA, Atty. of Record, for plaintiff.

Steven J. Abelson, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## OPINION

HARKINS, Senior Judge:

In this military pay case, plaintiff, formerly a major in the United States Army, seeks back pay and allowances that accrued following a conviction by general court martial on August 27, 1983, that was reversed on appellate review. All charges were dismissed and all findings and sentence were set aside on May 8, 1987. The complaint, filed March 22, 1989, invokes jurisdiction under the Tucker Act (28 U.S.C. § 1491(a)) and alleges pay has been denied pursuant to applicable statutes and regulations, including Army Regulations (AR) 135–91 and AR 104–10.[1]

### I.

Litigation of plaintiff's claim has been protracted. Oral argument was heard on May 20, 1992, on defendant's motion to dismiss pursuant to RCFC 12(b)(1), lack of jurisdiction over the subject matter, and on plaintiff's cross-motion for summary judgment. Defendant's motion to dismiss under RCFC 12(b)(1) was denied, and defendant's alternate motion to dismiss under RCFC 12(b)(4), failure to state a claim on which relief can be granted, was treated as a motion for summary judgment.

At argument on May 20, 1992, it was determined that there were three significant periods of time relative to plaintiff's claim:

1. Period of plaintiff's confinement—August 27, 1983 to November 4, 1983;

2. Period of appellate review—November 4, 1983 to March 16, 1987; and

3. Period post-appellate decision—March 16, 1987, to present.

During argument it became clear that there was confusion as to plaintiff's status

under applicable statutes and regulations during each of the relevant periods. The motion papers were incomplete as to applicable regulations and as to any orders for plaintiff to return to active duty and plaintiff's responses thereto. It was concluded that additional information on five issues was needed and a schedule was established for subsequent briefing.

The parties completed filing of supplemental briefs with additional appendices and stipulations on September 2, 1992, and a second oral argument on the cross-motions for summary judgment was heard on November 12, 1992. The material in II is quoted from an order filed December 22, 1992.

### II.

Material facts are not in dispute, and it is appropriate to determine plaintiff's claim by summary judgment procedures. The controlling issue is a question of law: interpretation of statutes and regulations that control plaintiff's status in the Army at the time the court martial sentence was imposed on August 27, 1983, and subsequently.

Plaintiff graduated from the Military Academy at West Point, New York, in June 1969, and was commissioned in the Army of the United States. He was discharged from the Army and appointed as a commissioned officer in the Reserve of the Army on June 30, 1973. Plaintiff graduated from medical school in May 1976, and was ordered to active duty, effective July 5, 1976. Plaintiff became a specialist in the field of orthopedic surgery, and was transferred to Fort Hood, Texas, in July 1980.

In January 1983, plaintiff was a commissioned officer in the Reserve of the Army under an appointment for an indefinite term, on active duty at Fort Hood, Texas, in the grade of major. A criminal investigation, relative to plaintiff's claim for dependents' travel pay and dislocation allowance in the 1980 move to Fort Hood, resulted in a report by a CID agent in the Criminal Investigation

---

1. Effective Oct. 29, 1992, the United States Claims Court was renamed the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub.L. No. 102–572,

§ 902(a), 106 Stat. 4506, 4516. The name change does not have legal consequence on former proceedings.

Command of an interview conducted in February 1983.

While the investigation was pending, plaintiff submitted an unqualified resignation under AR 635–120, Chapter 3, by letter dated April 26, 1983, and a resignation for the good of the service under AR 635–120, Chapter 5, on May 11, 1983. The Army refused to accept plaintiff's tender of unqualified resignation and it was returned to him without action on June 13, 1983. On August 3, 1983, plaintiff's tender of resignation for the good of the service was disapproved. As a result, all resignations tendered by plaintiff had been fully acted upon prior to August 27, 1983, and were not outstanding on that date.

Plaintiff was court martialed for violations of the Uniform Code of Military Justice (UCMJ) Articles 121, 132, and 133, 10 U.S.C. §§ 921, 932, 933 for larceny, fraudulent claims, and false representation. Plaintiff was found guilty on larceny and fraudulent claim charges. The military judge sentenced plaintiff on July 27, 1983, and on August 27, 1983, the convening authority approved dismissal from the service, confinement at hard labor for 3 months, and forfeiture of all pay and allowances. GCMO No. 28, D.A., HQs Fort Hood.

From August 27, 1983, to November 4, 1983, plaintiff was confined at Fort Leavenworth, Kansas. On August 27, 1983, and during the period of confinement, plaintiff's status was: a commissioned officer in the Reserve of the Army under appointment for an indefinite term on active duty in the grade of major. Plaintiff was under a service obligation for receiving Incentive Special Pay until September 30, 1983.

Pursuant to Order No. 202–10, D.A. Combined Arms Center, Fort Leavenworth, dated November 3, 1983, plaintiff was released from confinement at Fort Leavenworth on November 4, 1983. The order relieved plaintiff from active duty, effective November 4, 1983, terminated all temporary appointments on that date, retained plaintiff in the service pending final action on the court martial charges, and assigned plaintiff to the USAR Control GP (STANDBY) RCPAC. Plaintiff was not required to report physically to the Control Group. The order stated "Reasgmt orders will be issued upon completion of appellate review."

Since November 4, 1983, plaintiff has been free to engage in the practice of medicine, and has maintained a practice as an orthopedic surgeon. He has performed no services for the Army.

Appellate review of plaintiff's court martial resulted in decisions by the Court of Military Review on January 18, 1985, and by the United States Court of Military Appeals on March 16, 1987. The fraudulent claim charge and specification were set aside by the Court of Military Review on January 18, 1985. The Court of Military Appeals set aside the findings of guilty on the larceny charge and set aside the August 27, 1983, sentence on the ground that admission in evidence of the CID agent's report about the February 1983 interview was impermissibly prejudicial. 23 M.J. 374.

The decision of the Court of Military Appeals was implemented on May 8, 1987, by GCMO No. 22, HQs., Fort Hood. GCMO No. 22 recites the decisions made on appellate review to set aside the findings of guilty and the August 27, 1983, sentence, acknowledges that plaintiff was released from active duty effective November 4, 1983, and directs: "All rights, privileges and property of which the accused has been deprived by virtue of the findings of guilty and sentence so set aside will be restored."

The Army Reserve Personnel Center, St. Louis, Missouri, issued Orders D–01–002396, dated January 22, 1991, pursuant to AR 135–175. These orders discharged plaintiff from the Ready Reserve, effective December 21, 1990, provided plaintiff an Honorable Discharge certificate and terminated all appointments in the Reserve of the Army, and in the Army of the United States. The orders include the following: "As you no longer have any military status, your records are no longer maintained by the Department of the Army."

\* \* \* \* \* \*

Plaintiff claims entitlement to pay and allowances from the date of his sentence and confinement on August 27, 1983, to the date

of judgment. There are three significant time periods relative to this claim:

1. Confinement—August 27, 1983 through November 4, 1983

2. Appellate Review—November 4, 1983 through March 16, 1987

3. Post–Appellate Review—After March 16, 1987, to an end date.

Defendant concedes liability for basic pay and basic allowances for quarters (BAQ), subsistence (BAS), and a variable housing allowance (VHA) during period No. 1—Confinement. Defendant also concedes plaintiff is entitled to such pay and allowances during period No. 3 from the day the court martial conviction was overturned provided plaintiff requests or accepts orders to return to active duty so as to show he is willing, ready, and able to serve. Plaintiff's entitlement to pay and allowances for periods 2 and 3, accordingly, is resolved through analysis of the meaning and scope of 10 U.S.C. § 681(a), 10 U.S.C. § 875(a), AR 635–100, ¶ 3–71b and ¶ 3–71c in the light of the final decision by the Court of Military Appeals.

■ The Secretary has broad discretionary authority to release reservists from active duty at any time. 10 U.S.C. § 681(a) provides:

Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty.

■ When, as here, a new trial or rehearing is not ordered, UCMJ Article 75 (10 U.S.C. § 875) requires all rights, privileges, and property to be restored in circumstances where an executed part of a court martial sentence has been set aside. 10 U.S.C. § 875(a) provides:

Under such regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved, except an executed dismissal or discharge, shall be restored unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or rehearing.

Army regulations applicable to officers in the Army Reserve include AR 140–1, Army Reserve–Mission, Organization, and Training; AR 140–10, Army Reserve–Assignments, Attachments, Details and Transfers; AR 27–10, Military Justice; AR 635–100, Officer Personnel Separations; AR 635–5, Separation Documents; and AR 635–5–1, Separation Program Designators (SPD). Provisions of AR 27–10 and AR 635–100 apply to Army personnel generally; they are not limited to personnel in the Army Reserve.

AR 635–100 provides authority for the separation from the Active Army of commissioned officers and warrant officers. It applies to all Regular Army officer personnel and Reserve Component officer personnel on active duty. Chapter 3, which concerns relief from active duty of nonregular officers, contains sections I through XXXI. Section XIX is captioned: "Relief from Active Duty Pending Appellate Review." Paragraphs 3–71b and 3–71c relate to plaintiff's status. These paragraphs provide:

b. An officer holding a current appointment in the Army National Guard of the United States or United States Army Reserve which will not expire upon release from active duty who is sentenced to dismissal (commissioned officer) or dishonorable discharge (warrant officer) and confinement which has been served prior to completion of appellate review will be released from active duty upon completion of confinement.

c. Any officer or warrant officer relieved from active duty under provisions of paragraph 3–71a or b above, in whose case final action does not include execution of the dismissal or dishonorable discharge, will be returned to active duty with his/her consent in the grade held at the time of release and with the same service commitment he/she had at the time of release.

Defendant argues that the Secretary's decision to release plaintiff from active duty after he served his period of confinement is a policy decision wholly distinct from the ultimate judicial decision on the legality of the sentence and confinement. Since entitlement to pay and allowances ceases on lawful

release from active duty, defendant argues plaintiff has no valid claim for period No. 2.

Defendant is correct that the Secretary has broad discretionary powers to release reservists from active duty. The statute, 10 U.S.C. § 681(a), does not place any procedural or substantive limitations on the Secretary's discretion. The Secretary, however, administers the Army through a multitude of regulations which define the circumstances in which discretion is exercised. The case precedent is clear that once the Secretary has promulgated regulations and has applied such regulations in the administration of the status of military personnel, that action becomes subject to judicial review for compliance with those regulations and instructions. It has long been established that government officials must follow their own regulations even if they are not compelled to have them at all. *Sargisson v. United States*, 913 F.2d 918, 921 (Fed.Cir.1990), and cases there cited. *See also Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988).

■ Defendant views promulgation of AR 635–100, Chapter 3, Section XIX as an exercise of the Secretary's authority over the active duty status of a reserve officer so that action under paragraph 3–71b is separable from the court martial sentence and unaffected by the decision on appellate review. Under this view, plaintiff's release from active duty on November 4, 1983, was an administrative action taken pursuant to the Secretary's broad discretionary authority under 10 U.S.C. § 681(a). The defendant's argument, if correct, would render 10 U.S.C. § 875(a) without force because plaintiff's release from active duty was not effected as part of the court martial sentence. Accordingly, the argument goes, plaintiff's right to active duty status and pay were not rights "affected by an executed part" of a court martial sentence.

Defendant's attempt to divorce paragraphs 3–71b and 3–71c from plaintiff's court martial sentence and appellate review is an impermissible atomization of the regulatory structure. The argument fails to recognize the full scope of the impact of a final decision to vacate a court martial sentence for error. After the decision on appellate review, the issue is not the Secretary's power to release plaintiff from active duty; the issue is whether orders under Section XIX become void as of the date issued.

It is clear that, pending appellate review, there are valid policy reasons—morale, discipline, and good order—to relieve from active duty an officer under sentence of dismissal, who has just served time in confinement, and who continues to be subject to dismissal. The November 3, 1983, order was valid when issued, and if the sentence had not been set aside, its effectiveness would continue.

Defendant's attempt to separate Section XIX from the final judicial decision on the legality of plaintiff's conviction, however, is without merit. Section XIX is concerned solely with court martial proceedings and appellate review. The paragraphs are limited to situations that involve sentences of dismissal or dishonorable discharge and related periods of confinement.

Plaintiff's court martial sentence and confinement on August 27, 1983, triggered application of the provisions of Section XIX. On completion of appellate review the August 27, 1983, sentence was set aside and vacated. The sentence was rendered void and is given no effect.

Correction of plaintiff's records so that they would reflect the final judicial decision on appellate review would be as though the August 27, 1983, sentence had never existed. On such a record, there is nothing to trigger the provisions of Section XIX. With no basis in a valid sentence, plaintiff's confinement was not valid. Accordingly, the November 3, 1982, order, issued under paragraph 3–71b, was void, and its effect on plaintiff's status is as though it were never given. This principle is well established in Court of Claims precedent. *Bray v. United States*, 207 Ct.Cl. 60, 515 F.2d 1383, 1385 (1975); *Waller v. United States*, 198 Ct.Cl. 908, 461 F.2d 1273, 1276 (1972); *Piccone v. United States*, 186 Ct.Cl. 752, 407 F.2d 866, 871 (1969); *Keef v. United States*, 185 Ct.Cl. 454, 461, 1968 WL 9154 (1968); *Birt v. United States*, 180 Ct.Cl. 910, 913, 1967 WL 8881 (1967); *Boruski v. United States*, 140 Ct.Cl. 1, 5, 155 F.Supp. 320 (1957).

GCMO No. 22 provides that the Army is to restore all rights, privileges, and property of which plaintiff was deprived by virtue of the findings and sentence that had been set aside. The effect of this order is to restore to plaintiff the status he occupied on August 27, 1983, *i.e.,* a commissioned officer in the Reserve of the Army under appointment for an indefinite term on active duty in the grade of major, and under a service obligation for receiving Incentive Special Pay until September 30, 1983.

Defendant issued a DD Form 214, Certificate of Release or Discharge from Active Duty, on March 29, 1988, that states a separation date of November 4, 1983, gives as separation authority AR 635–100, Section XIX, and, for narrative reason states: "Service under sentence to dismissal awaiting appellate review." The function of plaintiff's DD Form 214 has been the source of confusion and controversy throughout this proceeding.

Preparation of DD Form 214 is prescribed by AR 635–5, which applies, among others, to members of the Army Reserve on active duty. The form is not an order, and it has no independent force. It is prepared from a worksheet maintained by personnel officers at the last duty station and issued in final form by one of the designated separation transfer activities. Once issued, a DD Form 214 can only be reissued in specific enumerated circumstances, which include direction by proper appellate authority, Executive Order, by the Secretary of the Army, or on an approved request from an individual. In essence, a DD Form 214 supposedly reflects a summary of the individual's service as reflected in underlying personnel records. On the facts of this case, preparation of plaintiff's DD Form 214, and its correction, involves purely administrative acts.

The DD Form 214 in this case is incorrect in that it purports to show plaintiff's status as of March 29, 1988, but actually only reflects his status as of November 4, 1983. It fails to show the status that existed after March 16, 1987. Further, it does not comply with the procedure established in AR 635–100, paragraph 3–73f. That subsection states:

As an exception to AR 635–5, DD Forms 214 (Certificate of Release or Discharge from Active Duty) will not be prepared upon relief from active duty. DD Form 214WS (Worksheet for Certificate of Release or Discharge from Active Duty) will be completed and forwarded by letter of transmittal to HQDA (DAPC–OPP–MS) with five copies of final relief order. Appropriate separation forms will be completed and issued by MIPERCEN upon final disposition of the case.

■ Confusion resulting from errors on plaintiff's DD Form 214 resulted in defendant's failure to conform with the procedures established in paragraph 3–71c, as that paragraph is construed by defendant. Defendant argues that plaintiff, under paragraph 3–71c, was entitled to request to return to active duty and to seek reinstatement as of May 8, 1987. Defendant concedes that plaintiff was not afforded an opportunity to request a return to active duty. For failure to afford such opportunity, defendant concedes that pay and allowances would be owed for period No. 3, if plaintiff would demonstrate he was willing, ready, and able so to serve.

Defendant's construction of paragraph 3–71c is flawed. Where the final action on appellate review does not include execution of a previously ordered dismissal, paragraph 3–71c provides the officer will be returned to active duty "with his/her consent" in the grade held at the time of release. Defendant construes the phrase "with his/her consent" to establish an obligation that the officer must request orders to return to active duty. Defendant's interpretation is contrary to the plain meaning of the phrase, and is erroneous. The consent requirement empowers an officer to reject unwanted, unlawful, or unwarranted orders. At most, the phrase "with his/her consent" is a limitation on defendant's authority to issue orders to active duty.

Plaintiff's active duty status, after March 16, 1987, was the same as it was on November 3, 1983. The provisions and procedures of paragraph 3–71c, therefore, are not relevant to plaintiff's right to pay and allowances during period No. 3.

In military pay cases, the setting aside of previously issued orders has the effect of creating a hiatus in the serviceman's records that is filled by giving recognition to a status that is a legal fiction. In this case, plaintiff's military records, when corrected as required by the decision of the Court of Military Appeals, show plaintiff on and after November 4, 1983, as an officer in the Reserve of the Army on active duty in the rank of major assigned to a control center without a duty assignment. In fact, during periods No. 2 and 3, plaintiff performed no services for the Army, made no applications to the Army for duty assignments, received no orders from the Army to active duty, and pursued a separate vocation in a medical practice as a specialist in orthopedic surgery.

■ Defendant concedes that there can be entitlement to pay when a reserve officer is in an active duty status without a duty assignment. Eligibility for basic pay is determined by active duty status, and is affected by pay grade and number of years of service, but is not affected by duty assignment.

Plaintiff for periods 1, 2 and 3 is entitled to pay and allowances as follows:
Basic Pay
Basic Allowances for Quarters (BAQ)
Basic Allowance for Subsistence (BAS)
Variable Housing Allowance (VHA)

■ Plaintiff, in addition to the above pay categories, seeks Medical Additional Special Pay (MASP) and Variable Incentive Special Pay (VSP) for all three periods. Unlike basic pay and allowances, such special payments are not dependant only upon active duty status. Entitlement to MASP requires orders to active duty for a period of at least one year; eligibility criteria for Incentive Special Pay requires the officer to sign an agreement to remain on active duty for at least 1 year. Plaintiff's agreement for Incentive Special Pay expired on September 30, 1983, and it was not renewed. Plaintiff cannot show that the additional requirements that permit eligibility for specialty or incentive payments were satisfied during any of the relevant periods.

Pursuant to an order dated January 2[2], 1991, plaintiff was given an Honorable Discharge certificate, effective December 21, 1990. Plaintiff contends the order and discharge certificate are invalid because he never received valid orders restoring him to active duty. Plaintiff does not take into account his restored status after the sentence and findings of guilty were set aside on appellate review. Defendant, at argument, conceded that, under defendant's interpretation of paragraph 3–71c procedures, the Army issued this order and discharge improperly. The order and discharge, however, have not been withdrawn, and no corrective action has been taken.

On January 2[2], 1991, the Army commanding general at Reserve Personnel Center had authority to discharge plaintiff from the reserves. Period No. 3 ended January 22, 1991.

### III.

The December 22, 1992, order directed defendant to prepare and provide to plaintiff calculations that detail the amount of pay and allowances plaintiff was eligible to recover, such amounts to be offset by the amounts plaintiff earned in his medical practice during period Nos. 2 and 3. Plaintiff was directed to provide to defendant evidence adequate to show the amount of such offset.

The parties were unable to agree upon the amount plaintiff is entitled to recover. The December 22, 1992, order, in such event, authorized the parties to request further proceedings on particular matters that need resolution.

On March 25, 1993, plaintiff moved to modify the December 22, 1992, order so as to extend the end date for period No. 3 on the theory that, under the sanctuary statute (10 U.S.C. § 1163(d) (1988)), and AR 624–100, he would be eligible for an additional year of constructive active duty that would qualify him for retirement on January 20, 1992, with retired pay. Plaintiff also requested the December 22, 1992, order be changed so that the amounts earned in his medical practice during period Nos. 2 and 3 would not be offset against his military pay and allowances for those periods.

On July 14, 1993, defendant moved to modify the December 22, 1992, order and find, among other matters, that plaintiff was not discharged from the Army on January 22, 1991, because the discharge action was erroneous and a nullity. Defendant also moved for a finding that plaintiff was not entitled to pay during period No. 3 because, since he was not ready, willing and able to serve at any time during that period, his tour of duty terminated on March 16, 1987.

On September 1, 1993, plaintiff agreed with defendant's admission that he was not legally discharged from the Army, and that the Honorable Discharge, effective December 21, 1990, was a legal nullity. Plaintiff contends he is not yet legally discharged and the appropriate end date for period No. 3 is the date of final judgment in this case. In such situation, plaintiff argues he would have served more than 20 years, would be eligible for retired pay, and would not need the protection of the sanctuary statute.

Defendant's argument that the January 22, 1991, discharge action was a nullity stems from errors on plaintiff's DD Form 214, and defendant's erroneous analysis of AR 635–100, § 3–71c. The section 3–71c procedures are not relevant to plaintiff's active duty status after March 16, 1987. Defendant's arguments were fully briefed in the summary judgment proceedings and were analyzed and ruled upon in the December 22, 1992, order. *See supra* pp. 32–35.

Even if defendant's analysis of section 3–71c were not erroneous, and the January 22, 1991, discharge order was issued through administrative error, in the circumstances of this case, the order would be effective to terminate plaintiff's constructive service in period No. 3. During that period, plaintiff's status on his military records, corrected as required by the decision of the Court of Military Appeals, shows plaintiff on and after November 4, 1983, as an officer in the Reserve of the Army on active duty in the rank of major assigned to a control center without a duty assignment. The Commanding General in the Army Reserve Personnel Center, who signed the January 22, 1991, order was authorized to terminate plaintiff's status in the reserves. Defendant has failed to offer any evidence that would negate such authority. Defendant has offered no convincing evidence that the discharge is not valid, has taken no effort to withdraw the discharge, or to correct any error. In such circumstances, the discharge is valid and operative. *See Garner v. United States,* 161 Ct.Cl. 73, 75, 1963 WL 8535 (1963).

The parties have presented no evidence or argument that warrants a change in the finding that period No. 3 ended January 22, 1991. Defendant's July 14, 1993, motion to modify the December 22, 1992, order in this respect is denied.

■ In his March 25, 1993, motion, plaintiff contends that on January 22, 1991, he qualified for the "sanctuary" protection afforded by 10 U.S.C. § 1163(d). That section provides:

> Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

Statutory limitations on separation of members of reserve components have been in the United States Code since 1952, and a sanctuary provision has existed since 1956. Pub.L. No. 82–476, ch. 608, § 249, 66 Stat. 495 (1952); Pub.L. No. 84–676, ch. 534, § 265, 70 Stat. 518 (1956). *See Wilson v. United States,* 917 F.2d 529, 533 (Fed.Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991) (Congressional policy clearly was that if reserve commissioned officers were to be passed over for promotion and retention, at least they could, after enough years, be guaranteed their retirement.). The provisions of section 1163(d) at all times have supplemented the policies and procedures applicable to limitations on separation that are embodied in subsections a, b, and c of section 1163. This relationship is reflected in AR 624–100, Promotion of Offices on Active Duty. Paragraph 2–14 ap-

plies to officers who have "failed selection to CPT, MAJ, or LTC a second time." Active duty status, in itself, is not sufficient to trigger the prohibition against involuntary release from that duty.

Plaintiff's status, after the court martial sentence was set aside, and his military records were corrected, was constructive active duty, a legal fiction. During period Nos. 2 and 3, plaintiff made no applications for duty assignments, did not compete for promotion with active duty officers, had not been considered for selection to the rank of lieutenant colonel under the procedures established in AR 624–100, and had not failed selection to that rank under those procedures.

AR 624–100, in ¶ 2–4 requires an announcement of the convening date of a selection board and an identification of the names and dates of rank of officers in the promotion zone for each competitive category as of that date. Nothing in the record establishes that plaintiff was so identified in any announcement or list. Paragraph 2–6 requires, among other items, that promotion selection boards be provided with the names of all officers in the competitive category, and the performance portion of the officers' military personnel file, with an official photograph if available. Nothing in the record shows that any selection board was provided such information concerning plaintiff.

The provisions in 10 U.S.C. § 1163(d), and the relief provided in AR 624–100, ¶ 2–14, do not apply. Plaintiff is not entitled to sanctuary.

In his March 25, 1993, motion, plaintiff argues his civilian earnings in period Nos. 2 and 3 should not offset the military pay he is eligible to recover because he was unable to practice as an orthopedic surgeon during the period November 4, 1983, to February 15, 1990. Plaintiff contends that after his release from confinement he worked for medical services companies as an emergency room physician at a variety of hospitals during odd hours (weekends, evenings, holidays) as a subcontractor, and such work is the kind of work he had performed while serving on active duty before his court martial conviction. Until February 15, 1990, when he again began work as an orthopedic surgeon,

his earnings allegedly were comparable to part time income earned while "moonlighting" in off duty hours during the months preceding his court martial.

Unless a regulation or a statute provides otherwise, this court routinely has required earnings received from non-Government sources during the period for which back pay is sought to be deducted from the back pay claim. If a Government employee loses a position with the Government, the employee cannot simply sit around and wait to obtain back pay from the Government. The employee has a duty to mitigate damages by obtaining, if possible, outside employment during any erroneous separation. The rule was established in *Motto v. United States,* 175 Ct.Cl. 862, 360 F.2d 643, 645–46 (1966). The offset rule has been recognized in numerous cases. "Civilian earnings must be 'set off' in mitigation of the amount otherwise due plaintiff." *Diamond v. United States,* 192 Ct.Cl. 502, 427 F.2d 1246, 1248 (1970). An offset by civilian earnings has been analogized to mitigation of damages. *Bates v. United States,* 197 Ct.Cl. 35, 453 F.2d 1382, 1385 (1972). Where "civilian earnings exceed the amount of entitlement, the latter ... is obliterated." *Conn v. United States,* 187 Ct. Cl. 319, 407 F.2d 879, 880 (1969). *See also Gearinger v. United States,* 188 Ct.Cl. 512, 520, 523, 412 F.2d 862 (1969); *Clackum v. United States,* 161 Ct.Cl. 34, 1963 WL 8558 (1963); *Garner v. United States,* 161 Ct.Cl. 73, 1963 WL 8535 (1963).

 In military pay cases, moonlighting earnings are not subject to offset if such outside income could have been received by the serviceman prior to discharge, in addition to the military pay called for by the position occupied. *Silver v. United States,* 213 Ct.Cl. 388, 551 F.2d 295, 297 (1977). Essentially, if civilian earnings are a substitution for military pay rather than a supplementation of military pay, setoff is mandated. Applied to the facts in this case, if the amount plaintiff earned as an emergency room physician during period Nos. 2 and 3 was a substitute for his military pay, then offset is required. If, however, it is in fact an amount comparable to that which he had previously earned in

addition to his military pay, offset is not required.

Plaintiff asserts that prior to his court martial, he worked for several medical services, in addition to his military duties, including Southwest Medical Associates (Richardson, Texas) and Spectrum Emergency Physicians (Dallas, Texas). Plaintiff offered two letters as proof that he worked in civilian emergency rooms as a subcontractor before his discharge: one from a hospital administrator at St. Ann's Sierra Vista Hospital, Truth or Consequences, New Mexico, and one from a physician. The hospital administrator stated that "during the year 1980 [plaintiff] in fact moonlighted in the emergency room of St. Ann's Hospital," and at that time he "was an orthopedic resident at Carrie Tingley Hospital in Truth or Consequences, New Mexico." There is no specific representation for any year other than 1980. The physician's letter dated September 16, 1983, was addressed to the Director of Classifications at Ft. Leavenworth during plaintiff's confinement. It stated that in the past, plaintiff had worked for Emergency Medicine Management Systems, that he would have a job immediately on release, and requested his early release be expedited.

Plaintiff's proof is not adequate to show that the civilian income earned in periods Nos. 2 and 3 was comparable to a supplement to military pay during those periods. Neither of the letters provide any details as to when in the past, how often, for how many hours per week, or at what hourly wage plaintiff worked. Presentation of detailed information is required.

Officers are precluded from employment which would require the officer to be separated from his organization, branch, or unit, or interferes with the performance of his military duties. 10 U.S.C. § 973(a) (1988). Since 1983, plaintiff admits he worked in private practice or for others on average more than 40 hours per week. Certainly, plaintiff could not have earned this income had he been on active duty rendering services to the Government. What plaintiff described as being the same as "off duty" or "part time" employment was in reality, "full time" service. Working full time in emergency rooms, would have interfered with the performance of military duties. Had he been on active duty, the Army would have been entitled to his complete services and undivided attention. Consequently, he could not have worked full time as a civilian contractor at hospital emergency rooms. Plaintiff could not have been able to meet his military requirements after working more than 40 hours per week in a civilian position.

Plaintiff concedes that the earnings from employment as an emergency room physician during period Nos. 2 and 3 were his only source of income. Such earnings were a substitution for his military pay.

The basic goal to be achieved in a military pay case has been defined: "Judicial relief provided to military servicemen who have been wrongfully discharged from service has been premised upon one central principle: making the injured men 'whole'. Courts attempt to return successful plaintiffs to the position that they would have occupied 'but for' their illegal release from duty." *Dilley v. Alexander,* 627 F.2d 407, 413 (D.C.Cir. 1980). Failure to offset plaintiff's civilian earnings during period Nos. 2 and 3 would confer a substantial windfall.

Plaintiff's March 25, 1993, motion relative to the sanctuary statute and offset of civilian earnings is denied.

In response to the direction in the December 22, 1992, order, the parties have provided information that details the amount of pay and allowances plaintiff is eligible to recover pursuant to the rulings there made. Defendant concedes liability for period No. 1 in an amount that includes Variable Special Pay. Defendant's calculation initially was presented in it's July 6, 1992, supplemental memorandum in support of its motion to dismiss, and was repeated without change in defendant's July 14, 1993, response. The December 22, 1992, order did not allow compensation for specialty or incentive payments during any of the three periods. Defendant's computation for period No. 1 is adjusted to exclude the amount for Variable Special Pay.

Plaintiff's entitlement for military pay and allowances during each period for Basic Pay, BAQ, BAS, and VHA is as follows:

| Period No. 1 | $ 6,926.47 |
|---|---|
| Period No. 2 | $173,349.71 |
| Period No. 3 | $214,322.38 |

The amount for period No. 1 is not subject to any offset. The entitlement for period Nos. 2 and 3 totals $387,672.09.

Plaintiff's civilian earnings during period Nos. 2 and 3 were:

| 1983 (Nov. 4–Dec. 31) | $ 8,500.00 |
|---|---|
| 1984 | 85,000.00 |
| 1985 | 99,630.00[2] |
| 1986 | 86,931.00 |
| 1987 | 55,482.00 |
| 1988 | 52,692.00 |
| 1989 | 80,529.00 |
| 1990 (Feb. 15–Dec. 31) | 152,977.00 |
| 1991 (Jan. 1–22) | 11,186.59[3] |
| Total | $632,927.59 |

Plaintiff's civilian earnings for period Nos. 2 and 3, $632,927.59, exceed the total military pay and allowances to which plaintiff is entitled. An offset for plaintiff's civilian earnings completely exceeds the amount of military entitlements. Plaintiff is entitled to recover nothing for period Nos. 2 and 3.

## CONCLUSION

On the basis of the foregoing findings of fact and conclusions of law, plaintiff is entitled to recover. The Clerk is directed to enter judgment for plaintiff in the amount of $6,926.47.

2. For the years 1983 through 1985, the figures noted are plaintiff's best estimates as he does not have copies of his tax returns for these years. Plaintiff would authorize the Government to obtain copies of these tax returns from the Internal Revenue Service. Without confirmation of these amounts, the plaintiff had sufficient income to exceed the amount due him. Defendant accepted as accurate the amounts reported by plaintiff for 1983 through 1985.

3. This amount was figured by prorating plaintiff's total income of $193,901 for the three week period of 1991 in issue here.