**Sheridon H. GROVES, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 94–5056.**

United States Court of Appeals, Federal Circuit.

Feb. 13, 1995.

Rehearing Denied April 12, 1995.

---

Louis P. Font, Font & Glazer, Boston, MA, argued, for plaintiff-appellant.

Steven J. Abelson, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director. Of counsel was Thomas W. Petersen.

Before ARCHER, Chief Judge, NEWMAN, and MAYER, Circuit Judges.

MAYER, Circuit Judge.

Sheridon H. Groves appeals the judgment of the United States Court of Federal Claims in his favor for $6,926.47, because it vastly undervalues his loss. 30 Fed.Cl. 28 (1993). We vacate the judgment in part and remand for further proceedings.

### Background

In June 1969, Groves was commissioned in the Army of the United States. On June 30, 1973, he was discharged from the Army and appointed as an officer in the Reserve of the Army. He graduated from medical school in May 1976, and was ordered to active duty, effective July 5 of that year. He became a specialist in orthopedic surgery, and was eventually promoted to the rank of major effective December 16, 1979.

In July 1983, Groves was tried by a court-martial on charges of larceny, making a false claim against the United States, and conduct unbecoming an officer. The charges arose from a claim requesting reimbursement of $443.40 for dependents' travel pay and dislocation allowance he filed following a move to Fort Hood, Texas, in July 1980. He was convicted on the first two charges, and found not guilty on the last. On July 27, 1983, the military judge sentenced Groves to dismissal from the service, forfeiture of all pay and allowances, and confinement at hard labor for one year. On August 27, 1983, the convening authority approved only so much of the sentence as provided for dismissal, forfeiture of pay and allowances, and confinement for a period of three months.

Following his court-martial, from August 27, 1983 to November 4, 1983, Groves was confined at Fort Leavenworth, Kansas. For the duration of his confinement, he remained a commissioned officer in the Reserve of the Army under appointment for an indefinite term on active duty at the rank of major. He was under a service obligation for receiving Incentive Special Pay until September 30, 1983.[1]

From the time he arrived at Fort Hood until his court-martial in 1983, Groves had performed his military duty as an orthopedic surgeon. As such, he qualified for, and consistently received, financial bonuses designed to attract and retain certain professionals in military service, including Variable Special Pay, Medical Additional Special Pay, and Incentive Special Pay.[2] In addition to his duties as an orthopedic surgeon in the Army,

---

1. Groves was also under a service obligation for receiving Medical Additional Special Pay until June 30, 1983. He was under charges when this agreement expired. The Army did not enter into a Medical Additional Special Pay agreement with Groves for the subsequent year. *See* note 2, *infra.*

2. Officers in the medical corps of the Army who are on active duty under an order to active duty for a period of at least one year are entitled to Variable Special Pay. 37 U.S.C. § 302(a)(1) (Supp. V 1993); *Military Pay and Allowances Entitlements Manual,* § 10501 (Department of Defense March 9, 1987). Similarly, such officers qualify for Medical Additional Special Pay so long as they (1) are not undergoing internship or initial residency training, and (2) sign an agreement to remain on active duty for at least one year. 37 U.S.C. § 302(a)(4); *Military Pay and Allowances Entitlements Manual,* §§ 10521, 10523. Finally, an officer must meet similar requirements for Incentive Special Pay, and must also obtain a determination of eligibility. 37 U.S.C. § 302(b); *Military Pay and Allowances Entitlements Manual,* §§ 10531, 10533.

Groves worked during his off-duty hours as a subcontractor for medical services companies in civilian hospitals. There he worked as an emergency room physician during evenings, weekends, and holidays.

On November 4, 1983, Groves was released from confinement and relieved from active duty pending appellate review. He was retained in the service to await final action on the court-martial charges. After his release from Fort Leavenworth, he returned to his work as a subcontractor for medical services companies, again as an emergency room physician. He obtained full-time work as an orthopedic surgeon when he moved to California in February 1990.

On January 18, 1985, the Army Court of Military Review, now Army Court of Criminal Appeals, *see* Pub.L. No. 103–337, § 924(b)(1), 108 Stat. 2663, 2831 (Oct. 5, 1994), set aside the fraudulent claim charge and specification. *United States v. Groves,* 19 M.J. 804 (ACMR 1985). Then, on March 16, 1987, the Court of Military Appeals, now United States Court of Appeals for the Armed Forces, *see* Pub.L. No. 103–337, § 924(a), 108 Stat. 2663, 2831 (Oct. 5, 1994), set aside the conviction and sentence on the larceny charge on the ground that certain evidence should not have been admitted. *United States v. Groves,* 23 M.J. 374 (CMA 1987). The order implementing the Court of Military Appeals judgment expressly directs that "All rights, privileges and property of which the accused has been deprived by virtue of the findings of guilty and sentence so set aside will be restored." *General Court–Martial Order No. 22,* HQs., Fort Hood (May 8, 1987) (paraphrasing 10 U.S.C. § 875(a) (1988)). On January 22, 1991, Groves was discharged from the Ready Reserve, effective December 21, 1990.

In the interim, on March 22, 1989, Groves filed this suit seeking back pay, allowances, and restoration to active duty. He asserted entitlement from the date of his sentencing and confinement to the present for basic pay, basic allowances for quarters and subsistence, variable housing allowance, Variable Special Pay, Medical Additional Special Pay, Incentive Special Pay, and restoration to active duty or modification of his discharge

orders to allow him to retire effective January 20, 1992, which would allow him to claim retired pay.

The Court of Federal Claims held that Groves was entitled to basic pay and allowances from the date of his sentencing until January 22, 1991, the date of the discharge orders. This foreclosed his retirement claim. The court denied Groves' request for special pay, holding that he was unable to show that he met the additional requirements for eligibility. And the court determined that the amount that Groves earned as an emergency room physician after his release should be offset against the award of back pay and allowances. Accordingly, the court awarded Groves a total of $6,926.47. This appeal followed.

*Discussion*

There is no disagreement that Groves is entitled to some back pay and allowances as a result of his illegal conviction. The parties argue here over just how much. We disagree with the measure adopted by the Court of Federal Claims.

I.

■ Groves first contends that the trial court erroneously relied on his status on November 4, 1983, to calculate his entitlement to back pay. He suggests that if the court had instead considered his status on July 27, 1983, as he says it should have done, his back pay award would have included Variable Special Pay, Medical Additional Special Pay, and Incentive Special Pay. We believe he is correct.

The Court of Federal Claims noted that "[u]nlike basic pay and allowances, such special payments are not dependant only upon active duty status. Entitlement to [Medical Additional Special Pay] requires orders to active duty for a period of at least one year; eligibility criteria for Incentive Special Pay requires the officer to sign an agreement to remain on active duty for at least 1 year." 30 Fed.Cl. at 35. The court denied Groves any special pay because he did not demonstrate that he had satisfied these additional requirements for eligibility for the special

pay in question. *See* 37 U.S.C. § 302(a) (Supp. V 1993) (Variable Special Pay); 37 U.S.C. § 302(a)(4) (Additional Special Pay); 37 U.S.C. § 302(b) (Incentive Special Pay).

■ It is unarguable that the special pay at issue here is awarded at the discretion of the Secretary of the Army, and that no court is qualified to review the substantive merits of a decision to deny it, so long as the decision comports with any procedural standards mandated by statute or regulation. *See Voge v. United States*, 844 F.2d 776, 779–80 (Fed.Cir.1988) (decision to terminate Additional Special Pay, to which physician would otherwise be entitled, subject only to review for compliance with established procedures, but not justiciable on the merits); *Adair v. United States*, 648 F.2d 1318, 1323, 227 Ct.Cl. 345 (1981) (decision to award Variable Incentive Pay discretionary and beyond review). But this is manifestly not a case where a servicemember challenges a military decision terminating an award of special pay or declining to award special pay in the first instance. In our view, the facts of this case dictate a different result.

■ Groves seeks payment of special pay corresponding to what he was receiving at the time of the court-martial proceedings against him. By statute,

all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved, except an executed dismissal or discharge, shall be restored unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or rehearing.

10 U.S.C. § 875(a). The purpose of this statute is to make the injured servicemember whole—to return him to the position that he would have enjoyed but for the erroneous conviction.

Groves is entitled to Variable Special Pay for the entire period. That pay depends solely on an officer's status on active duty under orders to active duty for at least one year. *See* 37 U.S.C. § 302(a). Groves appears to have received Variable Special Pay consistently prior to his court-martial, and there is no reason to believe that he would not have continued to do so but for the conviction and sentence.

■ The Secretary of the Army had discretion not to renew Groves' Incentive Special Pay agreement when it expired on September 30, 1983, *see* 37 U.S.C. § 302(b), and the merits of that decision would have been beyond review in court. But the Secretary must first exercise that discretion. In this case, Groves was denied his special pay by virtue of the court-martial conviction and sentence, later overturned, and not by any discretionary decision by the Secretary.

■ The same rationale applies to the decision not to renew Groves' Additional Special Pay when that agreement expired on June 30, 1983. While this decision would normally be well within the Secretary's discretion, *see id.* § 302(a)(4), that discretion is tempered by the statutory command of 10 U.S.C. § 875(a) to restore to Groves all rights, privileges, and property affected by the court-martial conviction. It cannot stand if the Secretary made the decision to deny Medical Additional Special Pay because Groves was under charges at that time.

Absent evidence that the Secretary would have otherwise denied Groves the special pay at issue, the statutory mandate to restore all rights, privileges, and property includes any special pay that Groves was receiving prior to his court-martial, and for which he would have continued to be eligible had the conviction never occurred.

■ We also agree with Groves that the statute contemplates restoration of all rights, privileges and property as of July 27, 1983, the date of the original findings of guilty and sentencing by the military judge, and not as of August 27, 1983, when the convening authority eventually approved the sentence. Although Groves continued to receive basic pay and allowances, and the confinement did not begin, until the latter date, in retrospect his status changed in the interim from active duty with a duty assignment as an orthopedic surgeon at Fort Hood to the legal fiction later recognized by the Court of Federal Claims—active duty assigned to a control group without a duty assignment. To the extent that recognition of the latter status

allowed the Court of Federal Claims to deny Groves a measure of what the wrongful conviction and sentence took from him, it failed to satisfy the statutory command to restore what was taken.

## II.

■ We turn next to Groves' contention that the Court of Federal Claims erred in determining that his entitlement to back pay ended on January 22, 1991, when the Army purported to discharge him for nonselection for promotion. The judgment of the Court of Military Appeals setting aside the court-martial conviction and sentence had the effect of restoring Groves to constructive active duty with an indefinite service obligation for the purpose of determining back pay and allowances due. He is entitled to constructive active duty credit, with all corresponding back pay and allowances, for as long as he retained this status—that is, until this active duty status ended as a result of some action releasing him from active duty. *See Garner v. United States,* 161 Ct.Cl. 73, 75, 1963 WL 8535 (1963).

Groves argues that the Army never relieved him from active duty. He maintains that the only attempt to discharge him—the January 22, 1991, discharge order—was a legal nullity because the Army violated its own regulations in issuing those orders. Accordingly, says Groves, he has not yet been validly relieved and is entitled to constructive credit up to the present day.

In the Court of Federal Claims, the government conceded that the January 22, 1991, discharge was invalid because the Army did not comply with its regulations providing that any officer relieved from active duty as a result of a sentence of dismissal, but for whom final action does not include execution of the dismissal, is to be returned to active duty with his consent. Army Regulation (AR) 635–100, ¶ 3–59c (June 1, 1989).[3] The government said that this failure to comply with established procedures—discharging Groves without first offering him the chance

to return to active duty—renders the discharge invalid.

That is not to say the government agreed with Groves' contention that he was entitled to constructive credit until the present. To the contrary, it suggested then, as it does here, that if the January 22, 1991 discharge was not valid, Groves is not entitled to any back pay or allowances whatsoever for the period following the Court of Military Appeals ruling setting aside his conviction and sentence. This is so, says the government, because Groves failed to demonstrate that he was ready, willing, and able to return to duty at any time during this period.

■ We disagree. It is true that the Secretary of the Army has broad discretion to release reserve officers from active duty. 10 U.S.C. § 681(a) (1988); *Sargisson v. United States,* 913 F.2d 918, 921 (Fed.Cir.1990). This discretion is largely beyond judicial review. *See Abruzzo v. United States,* 513 F.2d 608, 611, 206 Ct.Cl. 731 (1975). But when the Secretary voluntarily constrains his discretion by promulgating regulations and instructions for its exercise, he limits his "otherwise plenary discretion under 10 U.S.C. § 681(a), so that plaintiff is entitled to appropriate judicial review of the specific ground given for [his] release." *Borgford v. United States,* 208 Ct.Cl. 1040, 1041 (1976); *see Sargisson,* 913 F.2d at 921; *Voge,* 844 F.2d at 779.

That is precisely what happened here. The error in this case goes beyond the Army's failure to order Groves back to active duty. Indeed, that error was harmless. But the order itself issued in violation of established Army procedures; therefore the discharge order was void.

The January 22, 1991 order cites as authority AR 135–175 (May 1, 1971, as amended to May 15, 1987). The Court of Federal Claims apparently accepted this authority for the discharge based on the signature of the authorized commanding officer. But the regulation in question, entitled "Army National Guard and Army Reserve: Separation of Of-

---

**3.** The parties and the Court of Federal Claims refer to an earlier version of AR 635–100, dated August 1, 1982, in which this same provision is numbered ¶ 3–71c. We cite to the 1989 version throughout.

ficers," does not support the removal of an officer in Groves' circumstances.

Groves suggests, and the government apparently conceded below, that the specific reason for the discharge was nonselection for promotion. *See* 10 U.S.C. § 3846 (1988); covered in AR 135–175, ¶ 4–4a(5)(b). Not surprisingly, given Groves' constructive active duty status, the record does not indicate that he was ever considered for promotion to lieutenant colonel. Even under the deferential standard accorded the Army in personnel matters, Groves' discharge on grounds so obviously inapposite cannot stand. *Cf. Gearinger v. United States,* 412 F.2d 862, 865–66, 188 Ct.Cl. 512 (1969) (refusing to speculate whether servicemember would have been promoted or passed over had he been considered for promotion). Accordingly, his credit for constructive active duty continued after January 22, 1991.[4]

The government argues that even if the discharge action was void, Groves' entitlement to back pay and allowances terminated by January 22, 1991, or indeed, well before that date, because he did not prove that he was ready, willing, and able to report for active duty by that time. *See Graves v. United States,* 176 Ct.Cl. 68, 76, 1966 WL 8807 (1966) ("It has long been the rule in this court that back pay for improper dismissal will be denied where the employee is not ready, willing and able to resume his position during the period for which relief is sought."). However, Groves' special circumstances did not obligate him to request orders to return to active duty; the regulations provide that an officer relieved from active duty pending appellate review in whose case final action does not include execution of a dismissal or discharge "will be returned to active duty with his or her consent." AR 635–100, ¶ 3–59c. This effectively put the onus on the Army to order Groves to active duty, while empowering him to reject unwanted, irregular, or unwarranted orders.

While Groves had to prove that he was ready, willing, and able to serve, *Piccone v. United States,* 407 F.2d 866, 876, 186 Ct.Cl. 752 (1969), the government must "demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance" to its charge that Groves was not prepared to serve. *Id.* (internal quotations omitted). In this case, that evidence points to February 15, 1992, the date Groves was last ordered to active duty.

The Army made numerous prior attempts to return Groves to active duty. On November 24, 1991, it ordered him to report for active duty at Walter Reed Army Medical Center in Washington, D.C. These orders stated that he had a three year service obligation. Groves, who had been serving an indefinite term with no service obligation before his court-martial, apparently objected to the three year obligation. A series of amended orders followed. Each time, Groves objected to some element of the order and refused to report for active duty. Finally, on February 7, the Army ordered Groves to report by February 15, 1992. It issued no amended orders after February 7, 1992, and Groves never returned to active duty.

These orders and amended orders reveal a process of ongoing negotiation between Groves and the Army. The government says that this proves that Groves was not ready and able to serve on January 22, 1991, fully ten months before the Army issued the first in the series of orders. We disagree with the suggestion that Groves' eventual failure to report for active duty when finally ordered to do so can show that he was not ready to do so almost a year earlier. The record shows that Groves was not ready, willing, and able to return to active duty when ordered to report by February 15, 1992. Accordingly, he is entitled to constructive active duty

---

4. There appears to be some question whether AR 135–175 applied to Groves in the first place. That regulation extends only to reserve officers not on active duty. AR 135–175, ¶ 1–2 (May 1, 1971, as amended to May 15, 1987). As we said, Groves was constructively on active duty throughout the period. Thus, the Army's efforts to discharge him would seem to fall under AR

635–100 (June 1, 1989) ("Personnel Separations: Officer Personnel"), and AR 624–100, ¶ 2–14 (September 1, 1989) ("Promotion of Officers on Active Duty: Failure of Selection for Promotion on the Active Duty List"). Those regulations provide separate procedures for relieving reserve officers from active duty, none of which were followed here.

credit, and corresponding back pay and allowances, only until that date. Had he remained on active duty throughout, Groves would have become eligible for retirement on January 20, 1992. Because he is entitled to constructive active duty credit after that date, he also is entitled to retired pay. *See Diamond v. United States*, 427 F.2d 1246, 1249, 192 Ct.Cl. 502 (1970); *Gearinger v. United States*, 412 F.2d at 866 n. 8, 867.[5]

### III. ·

 Groves also challenges the Court of Federal Claims' set off of the money he earned as an emergency room physician after his release from Fort Leavenworth against his award of back pay and allowances. The court did this because it was not convinced that Groves' civilian income "was comparable to a supplement to military pay" during the period following his release from confinement. 30 Fed.Cl. at 38. Instead, the court held that "[f]ailure to offset plaintiff's civilian earnings ... would confer a substantial windfall." *Id.*

 A servicemember deprived of military pay by virtue of a wrongful separation must generally mitigate his damages with any income from subsequent civilian employment. *Motto v. United States*, 360 F.2d 643, 647, 175 Ct.Cl. 862 (1966). The earnings from such outside employment must be deducted from any award of back pay if he would not have received those earnings had he remained in the service. *See Silver v. United States*, 551 F.2d 295, 297, 213 Ct.Cl. 388 (1977); *Conn v. United States*, 407 F.2d 879, 880, 187 Ct.Cl. 319 (1969). As the trial court recognized, this means that "moonlighting earnings are not subject to offset if such outside income could have been received by the servicemember prior to discharge, in addition to the military pay called for by the position occupied." 30 Fed.Cl. at 37.

But it appears that Groves would have received at least a portion of the civilian earnings in question even if he had remained on active duty. Officers in the Army Medical department are authorized by regulation to engage in civilian employment during their off-duty hours with command approval. AR 40–1, ¶ 1–8(a) (July 1, 1983 as amended to August 1, 1990). By regulation, an officer seeking permission to engage in off-duty employment must submit a written request to do so; commanders must approve or disapprove the request in writing. *Id.* ¶ 1–8(d). Of course, the officer's primary responsibility remains to his military duties; the regulation contemplates that "[r]equests for civilian employment that exceed 16 hours a week usually will be denied," although exceptions are permitted if "circumstances clearly show that the additional hours will not adversely affect military duties." *Id.* ¶ 1–8(b)(1). ·

In his March 23, 1993 affidavit, Groves stated that in 1980 he began moonlighting in civilian emergency rooms as a subcontractor for medical services companies in addition to his full-time position as an orthopedic surgeon in the Army. His off-duty work was limited to evenings, weekends, and holidays—times when he was not required to perform military duties. Indeed, in the event of a potential scheduling conflict, Groves was free to decline any work proposed by his civilian employers.

According to the affidavit, Groves had permission from his commanding officer to engage in this off-duty civilian employment. While there is no written authorization in the record, as required by AR 40–1, the government has not disputed that he was so authorized. Groves continues that he was allowed to work as many hours as he chose, but there is no evidence that he sought or was granted an exception that would authorize work over 16 hours per week. Therefore, we can only assume that Groves obtained no such ruling, so that his moonlighting was authorized only up to 16 hours per week.

As for employment after his release, the affidavit states that Groves' work "almost always consisted of working during evenings and weekends," and that he "worked no more than two or three days a week (as I had done while on active duty)." The Army presented no evidence to dispute this, relying instead on arguments that full time employment in

---

5. In light of this, we need not consider Groves' argument that he is entitled to retired pay under the "sanctuary statute," 10 U.S.C. § 1163(d) (1988).

emergency rooms would have interfered with Groves' military duties, and would therefore not have been approved by Groves' commanding officer. Be that as it may, the record supports the conclusion that Groves was authorized to engage in off-duty employment for up to 16 hours per week, and that he performed such employment as an emergency room physician prior to his court-martial. On this record, Groves' back pay award should be offset by his post-release civilian earnings only to the extent that he could not have received those earnings had he remained on active duty—that is, to the extent that they exceed the 16 hours per week of moonlighting he performed, with the authorization of his commanding officer, while on active duty.

### Conclusion

Accordingly, the judgment of the United States Court of Federal Claims is vacated in part and the case is remanded for further proceedings consistent with this opinion. Interest on the entire award will run from the date of the original judgment in the trial court.

### COSTS

Groves shall have his costs.

*VACATED IN PART AND REMANDED.*